MARTHA V. BEVERLEY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

EDWARD BEVERLEY *vs.* SAME.

Suffolk.    January 17, 1907. — February 28, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Evidence,* Opinion, Matters of common knowledge, Materiality. *Carrier,* Of passengers Negligence. *Elevated Railway. Pleading, Civil,* Variance.

An ordinary observer may testify as to his conclusions of fact at the time of his observation in regard to a condition of things which can be understood by men in general and which cannot be reproduced before the jury as it appeared to the witness.

In an action by a woman passenger against a corporation operating an elevated railway for personal injuries caused by the alleged failure of the defendant to limit or control the crowd of passengers upon a platform of one of its terminal elevated stations, the plaintiff on her cross-examination of a motorman of the defendant may ask him whether, if three cars each unloaded thirty-three passengers upon a certain part of the platform, it would make a fair sized crowd on that platform.

In an action by a woman passenger against a corporation operating an elevated railway for personal injuries caused by the alleged failure of the defendant to limit or control the crowd of passengers upon the platform of one of its terminal elevated stations, the plaintiff, on her cross-examination of the chief inspector of the division of the defendant's railway in which the accident occurred, may ask him whether *the size of the crowd on the platform of the station* could be controlled by controlling the number of persons allowed to enter the station through the turnstiles, and by regulating the number of surface cars and the number of elevated trains allowed to go into the station. If the answer to this question is matter of common knowledge the defendant is not harmed by its admission, and, if not such matter, it is admissible.

In an action by a woman passenger against a corporation operating an elevated railway for personal injuries caused by the alleged failure of the defendant to limit or control the crowd of passengers upon the platform of one of its terminal stations, by reason of which the plaintiff in attempting to go from a surface car

to take an elevated train was pushed off the platform and fell into the pit containing the adjoining surface car track, and was injured, the plaintiff offered to prove that at some time after the accident the defendant had extended its platform so as to cover twenty-five feet in length near the place where the plaintiff fell. The defendant's counsel had admitted that it was physically possible to increase the platform in this way but refused to concede that it was practically possible. The plaintiff offered the evidence to show that the increase of space was practically possible. The judge admitted the evidence for this limited purpose, instructing the jury that it was not evidence of negligence on the part of the defendant. *Held*, that the evidence was competent for the limited purpose for which it was admitted. °

In an action by a woman passenger against a corporation operating an elevated railway for personal injuries caused by the alleged negligence of the defendant in failing to provide for limiting or controlling the crowd of passengers upon the platform of one of its terminal stations, the presiding judge properly may refuse to allow the defendant to ask its superintendent of the division where the accident occurred whether in determining the plan of operating such a railway it is proper to take into consideration the desire of the travelling public to take their chances in the crowd rather than to be kept back, where such desire can be taken into consideration without interfering with safety in the operation of the railway, such inquiry not only being immaterial but tending to distract the attention of the jury from the issue of the defendant's negligence.

In an action by a passenger against a corporation operating an elevated railway for personal injuries from being pushed off an overcrowded platform at a station, it is evidence of negligence on the part of the defendant that it failed to provide a sufficient number of competent servants to guard its passengers from the dangers incident to the platform being overcrowded.

In an action by a passenger against a corporation operating an elevated railway for personal injuries from being pushed off an overcrowded platform at a terminal station of the defendant when attempting to go from a surface car to take an elevated train, it is evidence of negligence on the part of the defendant that the portion of the platform where passengers alighted from surface cars was too small to take care of the passengers who were landed on it; and it also is evidence of such negligence that a guard who should have been on this part of the platform to prevent pushing and crowding, if he could, was not there when the plaintiff was injured.

In an action by a passenger against a corporation operating an elevated railway for personal injuries from being pushed off an overcrowded platform at a terminal station of the defendant when attempting to go from a surface car to take an elevated train, if there is evidence that the portion of the platform where passengers alighted from surface cars was too small for the purpose and might have been made larger, this is evidence of negligence on the part of the defendant in the construction or maintenance of its platform on which the plaintiff is entitled to go to the jury, although this ground of negligence was not alleged in the declaration, if the objection of the variance was not taken at the trial.

If a corporation operating an elevated railway at certain hours of every week day assembles on the platforms of its stations such large crowds of passengers necessarily going in opposite directions, that on one of these occasions a passenger on the outside of the crowd, in spite of all he can do, is pushed off the platform into the adjoining pit in which the tracks are laid, and the accident is due solely to the ordinary crowding which occurs during rush hours, the railway company is liable to the passenger for his injuries thus caused.

Two actions of tort against the Boston Elevated Railway Company, the first by a married woman for personal injuries incurred on December 3, 1903, at the Sullivan Square terminal station of the defendant's elevated railway, and the second by the husband of the plaintiff in the first case for the loss of her services and the expenses of care and medical attendance made necessary by her injuries. Writs dated January 15, 1904.

In the Superior Court the cases were tried together before *Wait*, J. The plaintiff in the first case testified that she had lived in Saco, Maine, for the past five years and was sixty-four years of age; that previously she had lived in Boston, but she had never been to Sullivan Square while she lived here and did not remember that she had ridden on the elevated railway; that about a week before the day of the accident she came to visit friends who lived at Grove Hall; that the day before the accident she had ridden on the elevated railway to Sullivan Square somewhere between eleven and twelve o'clock, and there took a Melrose car; that she was in the station not more than five minutes and there were very few people there; that she did not return to Boston by way of Sullivan Square, but by steam cars; that on the day of the accident she took the train to Sullivan Square and got there about eleven o'clock; that she remained perhaps five or ten minutes and then took an Everett car; that there were very few passengers in the station; that she came back from Everett to Sullivan Square at one o'clock and remained about a half an hour, taking lunch at the lunch counter; that there was no crowd; that she then took a Magoun Square car for Somerville; that she returned from Somerville, getting into the station between half past five and six, a little before six; that no announcement was made in the car as it came in; that she got off from the car upon the platform; that there was no car ahead of them on the same track; that there were a great many people on the platform when she got off; that she tried to get to the elevated, — started to walk out to the elevated, and there was a crowd up behind her and there was a crowd that crowded in to get on to the car she got off from. They were pushing in the opposite direction. They were coming this way and that way. "I got on the side with the crowd going this way, — what I supposed was the right way to go. I was trying my

best to get out and they kept pushing me over and pushing me over until I went right off.  They pushed me right off the platform, forced me off."  She further testified " that she did not see any railroad man in uniform, what is called a guard, and nobody protected her."  When pushed off the platform she fell into the pit containing the adjoining surface car track and broke her leg.

A witness called by the plaintiff testified that for a year he had used the Sullivan Square terminal twice a day six days in the week and that his usual hour for going home was about half past five; that he was on his way home at the time of the accident.  A plan of the Sullivan Square station showing the tracks and the platforms was shown to the jury and also to this witness. The above is a reduced copy of a part of this plan.

This witness testified that when he saw the plaintiff in the first case he was walking across the platform from the elevated to track 1 for the purpose of taking a Broadway car to Somer-

ville. (The letter W on the plan shows where the witness said he was.) The first thing that attracted his attention to the accident was seeing the woman fall on the track. She was on the outer border of a large crowd of people coming from the inbound cars, making their way to the elevated. At the same time there was another crowd making their way to the surface cars. At about the point where these two crowds met she was on the outer border, and when his attention was attracted to her she was pushed off at that point on to track 1; that as a rough estimate she was about fifteen feet from the end of track 1 when she fell; he was then about fifteen feet from the end of track 1 toward the elevated; that there were no cars on track 1 behind her when she fell and that there was at least one car on track 2; that the platform was as full as it well could be; that he had been there a good many nights at about that time, for the purpose of taking a car at the same place, and in size and action the crowd was just about a typical crowd at that time in the evening on week days in about that place; that the width of the platform between tracks 1 and 2 was seven feet four inches according to a measurement which he took a week later. On cross-examination this witness testified that he was six feet four inches tall and that he could see the plaintiff fall by seeing over the crowd.

A witness, called by the defendant, who also was present and saw the plaintiff in the first case fall from the platform into the pit, " testified that he went through Sullivan Square station twice a day, sometimes four times, nearly every night at the same time; that the crowd was about the same size as an average crowd that he saw there nights; that the movement of the crowd was no different from the movement of the average crowd there on the average night; that he did not see the last push, if it was a push, which caused this woman to fall; that he saw the crowd was moving both ways; that he noticed they were movi᷉ before he saw the lady fall."

A motorman in the employ of the defendant, called he defendant, was asked on cross-examination " If three c n- loaded thirty-three passengers each upon the platform l en [tracks] Nos. 1 and 2 would it make a fair sized crowd c at platform ?"

The defendant objected to the question on the ground that it called for a conclusion the jury were able to form as well as the witness.

The judge said : " I do not so understand the question. I understand the question to be, assuming that number of people are left by the cars there, in his judgment, would it be what he calls a usual crowd on the platform? In that sense I allow the question to be answered." The witness answered : " No, sir." — " Q. Ordinarily it would be larger than that ? A. Sometimes."

One James, who was the chief inspector of the division of the defendant's railway in which the accident happened, called by the defendant, was asked on cross-examination : " Now, by controlling the number of people, by controlling the number of cars, that went into the station from the surface tracks, in a measure the railway company could control the number of passengers in that station, could it not ? " The defendant excepted to this question. The witness answered : " I should say so." The witness also was asked : " By controlling the number of people that went through the turnstiles, in a measure the crowd could be controlled, which would gather up above ? " The defendant excepted to the question. The witness answered : " Yes, sir, as far as I know." The witness also was asked : " By controlling the incoming of trains on the elevated, in a measure the crowd in the station could be controlled ? " The defendant excepted to the question. The witness answered : " As far as I know, yes, sir." The witness also was asked : " By controlling all three of those methods of approach, the railroad had it in its power to control the size of the crowd which would be at the station ? " The defendant excepted to the question. The witness answered : " I should say so."

An exception of the defendant to the admission of evidence in regard to the extension of the platform at some time after the accident and the limited purpose for which this evidence was admitted by the judge are described in the opinion. At the close of his charge the judge at the suggestion of the defendant cautioned the jury in regard to this evidence not being admissible to show negligence as follows : " The change in the space at the end of the second track, gentlemen, evidence with regard to that was admitted solely for the purpose of showing what it is possi-

ble to do with regard to the platforms there in handling the various crowds. It is not admitted as any evidence of negligence. The fact that the railroad made the change afterward is no evidence which you have a right to consider that it was negligent in having the condition which existed at the time of the accident."

One Pasho, the superintendent of the division of the defendant's railway in which the accident occurred, was called as a witness by the defendant. In his direct examination he was asked the following question: " In determining the plan of operating a street railway whether or not in your opinion as an expert railroad man, it is proper to take into consideration the desires of the travelling public, where they can be taken into consideration without interfering with safety in the operation of the railway."

The plaintiff objected to this question and the judge excluded it, stating that it hardly was a matter for expert testimony, and was something the jury could pass upon.

The defendant made the following offer of proof: " I wish to show complaints which would arise from the travelling public if cars were kept out on the structure and the passengers therein were not permitted to alight on the platform and take their chances in the crowd ; that the complaints would be greater than they are or have been from the fact that the station platforms are crowded. It is for that purpose that I am asking this question and subsequent questions." The judge excluded the question subject to the defendant's exception.

There was evidence that one Taylor was a person employed by the defendant whose duty it was to be on the platform between the tracks 1 and 2 and to prevent pushing and crowding if he could ; that he was the only person employed there for that purpose ; and that he was not present at the time of the accident.

The defendant asked the judge to make, among others, the following rulings:

3. There is no evidence of negligence on the part of the defendant in either the construction or maintenance of the roadbed or platform, on or near which the plaintiff claims she was injured.

6. The defendant owed to the plaintiff under all the circumstances of this case only ordinary care.

8. The defendant is not responsible for the negligent acts of other passengers which it could not foresee, nor is it responsible for accidents happening solely through the ordinary rushing and crowding which occurs on the elevated system during rush hours.

The judge refused to make the rulings numbered three and six, and also refused to make the portion of the ruling numbered eight beginning with the word " nor " after the first clause. The defendant excepted to these refusals.

The jury returned a verdict for the plaintiff in the first case in the sum of $4,000 and for the plaintiff in the second case in the sum of $2,000.   The defendant alleged exceptions.

*E. P. Saltonstall & S. H. E. Freund,* for the defendant.

*W. I. Badger,* (*P. G. Carleton & N. L. Frothingham* with him,) for the plaintiffs.

LORING, J.   1. The exception must be overruled to the admission of the question : " If three cars unloaded thirty-three passengers each upon the platform between Nos. 1 and 2 would it make a fair sized crowd on that platform ? "

An ordinary person does not know from a statement of the facts whether the unloading of three cars containing thirty-three passengers each would make a fair sized crowd on the platform in question, the dimensions of which were in evidence.   That is a conclusion relating to matters which are capable of being understood by men in general and which cannot be reproduced before the jury precisely as they appeared to the witness.   The evidence comes within the rule laid down in *Commonwealth* v. *Sturtivant,* 117 Mass. 122.

2. We are of opinion that the judge could allow the plaintiff to ask James, the defendant's inspector of surface cars on the division in question, whether the crowd on the platform of the station could be controlled by the number of incoming surface cars allowed to go into the station, by the number of persons allowed to go into the station through the turnstiles, and by the number of incoming elevated trains allowed to go into the station ; and that by controlling them in these ways the size of the crowd in the station could be controlled.   The issues being

tried were in substance: First, was the defendant negligent in allowing the crowd to gather which did gather on the platform at the time in question? Second, was it negligent in the means which it adopted to control it? Third, was it negligent in the area of its platforms in connection with the length of tracks for cars to stand at one time in delivering and taking on passengers? The means which it had to prevent a crowd from gathering on the platform was a fact to be proved. The only objection made by the defendant is that every one knows the facts proved. If they do, the defendant was not injured by the admission of the evidence. If they do not, the evidence was admissible.

3. The next exception argued is the ruling of the judge that it was competent for the plaintiff to prove that at some time since the accident the defendant had extended its platform so as to cover twenty-five feet in length of the inner end of track 1. This was offered by the plaintiff to show that it was not only physically possible to increase the platform in this way, which the defendant's counsel admitted, but that it was practically possible, having regard to the conduct of its business, which the defendant's counsel refused to concede. The judge ruled that it was competent for the purpose for which it was offered, but not for the purpose of showing negligence on the part of the defendant at the time in question. For this purpose, under this condition of the evidence and of the contentions made by the defendant, the evidence was competent. No objection was made at the trial that the negligence alleged in the declaration did not cover this. For that reason this objection, if well taken, is not open now.

4. One of the questions on trial was whether the defendant had been negligent in providing for the safety of passengers on its platforms arising from the dangers incident to the platforms being overcrowded. To go into a consideration of the propriety on the part of the defendant's officers of consulting the desires of the travelling public to be carried rapidly when that could be done " without interfering with safety in the operation of the railroad" was not only not material to the issue on trial but would have tended to distract the attention of the jury from that issue. The presiding judge was right in excluding the question put to Pasho.

5. The plaintiff had a right to go to the jury on the doctrine of *Kuhlen* v. *Boston & Northern Street Railway*, 193 Mass. 341, and also on these two further grounds : (1) That the platform in question was too small to take care of the passengers who landed on it; and (2) that the guard (Taylor by name) who should have been on this platform was not there.

6. There was evidence that the platform was too small for the passengers who could be and were delivered on to it. The objection that this ground of negligence was not alleged in the declaration was not taken at the trial, as we have said before. The third ruling asked for was rightly refused.

7. It is hard to understand the contention of the defendant in insisting that the second part of the eighth ruling asked for by it should have been given. The jury were warranted in finding that the two crowds going in opposite directions were so great that the plaintiff was without her fault thrown off the platform on which the defendant placed her, into the pit of No. 1 track. Its contention under the eighth request for a ruling is that if this is the ordinary crowding which occurs during rush hours and the accident is due to that alone, it is not liable. But in our opinion that would make it liable. We do not see how a jury could find that the defendant company was not negligent when it continued to assemble on its platforms, at certain hours in the day, such large crowds, necessarily going in opposite directions, that those on the outside, in spite of all they can do, are carried off the platform into the trench in which the tracks are laid.

*Exceptions overruled.*