FREDERICK W. COY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 21, 22, 1912. — June 18, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Street Railway. Negligence,* Street railway. *Evidence,* Relevancy and materiality.

It is the duty of a street railway company to protect its passengers from injuries resulting from harmful misconduct on the part of other passengers so far as such misconduct reasonably can be anticipated and guarded against, and to that end to use all practicable means consistent with proper efficiency in the management of its business which experience or a due consideration of the circumstances suggest.

At the trial of an action for personal injuries against a street railway company by a passenger who was knocked from the left hand running board of an open car by another passenger who was rushing to leave the car, there was evidence that at the time of the accident the car was crowded with passengers and was approaching a transfer station maintained and controlled by the defendant, that it was a practice of passengers, of which the defendant knew or should have known, at the time of day and at the place of the accident to leave cars on the left hand side, rush across an intervening track and take a train about to depart from the station, and that such conduct was likely to result in injury to other passengers. Evidence was offered by the plaintiff tending to show that by the use of a sidebar on the left hand side of the car or by the construction of a fence between the tracks such conduct on the part of passengers might be prevented. The evidence was excluded and a verdict was ordered for the defendant. *Held,* that the evidence was competent on the question whether the defendant had done all that was practicable to prevent such an accident as occurred, and therefore that it should have been admitted; and that the case should have been submitted to the jury.

MORTON, J. This is an action of tort to recover for personal injuries received by the plaintiff on June 5, 1905, while a passenger on one of the defendant's cars. At the close of the evidence the presiding judge* directed a verdict for the defendant, and by agreement reported the case "upon all the evidence that has been properly admitted, and such other evidence, if any, as has been offered and not admitted which should have been admitted, and no other." If a verdict should not have been directed for the defendant, judgment is to be entered for the plaintiff for $1,900; otherwise, judgment is to be entered on the verdict for the defendant.

* *Dana, J.*

We think that the plaintiff is entitled to judgment. On the day of the accident the plaintiff took a surface car at the corner of Savin and Warren Streets, Roxbury, for the elevated station at Dudley Street on his way to his place of business on Haverhill Street, Boston. The seats of the car were all full and there was no room on the right hand running board and he took a place on the left hand running board and remained there till the accident. Other passengers also got on to the left hand running board. The plaintiff stood between the second and third seats from the rear, holding on to a stanchion, and while in that position paid his fare to the conductor. As the car was entering on the loop at the top of the incline which led up to the Dudley Street station, "passengers began to make a rush for the left hand running board and across the tracks up the steps to the train of the elevated. There were six or eight made the dive all at once in front of the witness, and one who was in the rear of the witness, practically in the rear, as the witness stood at the second seat from the rear, came against him with such force that it broke his hold on the stanchion and he was thrown clear over to the opposite track, striking on his left shoulder and left hip." This was the plaintiff's account of the way in which and the circumstances under which the accident happened. Testimony from other witnesses tended to show that it was the practice for passengers to leave the car hastily at or near the point where the accident occurred and cross the tracks to catch the elevated train that might be standing at the station. They did this instead of waiting for the car to come to a stop at the station a little farther on. The manner of leaving the car was described by different witnesses as "hurriedly, . . . with degrees of violence and jostling, . . . more or less of a rush." One witness testified that "he had seen passengers jump from the running rail [board] to the track and cross over to the elevated trains. That the passengers so jumping moved very quickly." Another witness testified that "he had seen passengers at that point jump off. That the witness had seen them coming in contact with people in doing that, and had seen them shove." This witness on cross-examination said that it "made no difference whether any one was standing on the running board. They brushed right by them and rushed over there as though they didn't have a minute to live." The estimates in regard to the number of passengers jumping off

varied from four to six or eight or ten according to the more or less crowded condition of the car. As to the frequency with which the jumping off occurred, one witness said that it took place "five times out of six;" another, that "hardly a day went by . . . but they would jump;" still another, that "it occurred every time he went there, which was three times a week," and a fourth, that "he would see this happen nearly every morning." The evidence tended to show that the practice had continued for a considerable length of time.

It was the duty of the defendant to protect its passengers from harmful misconduct on the part of other passengers so far as the same could be reasonably anticipated and guarded against, and to that end to use all practicable means consistent with proper efficiency in the management of its business which experience or a due consideration of the circumstances might suggest to prevent the occurrence of such an accident as happened. *Kelley* v. *Boston Elevated Railway*, 210 Mass. 454. *Glennen* v. *Boston Elevated Railway*, 207 Mass. 497. *Jackson* v. *Old Colony Street Railway*, 206 Mass. 477. *Beverley* v. *Boston Elevated Railway*, 194 Mass. 450. *Kuhlen* v. *Boston & Northern Street Railway*, 193 Mass. 341. The evidence tended to show the existence of a practice which, if it was not known to the defendant, should have been known to it, and which reasonably might have been anticipated as likely to result in such an accident as that which happened to the plaintiff and against which therefore it was the defendant's duty to protect the plaintiff if reasonably practicable to do so. As bearing on that the plaintiff offered to show that it was practicable to put up a fence that would prevent passengers from crossing the track to take the elevated cars, and that that had been done since the accident. He also offered to show that it was practicable to put side bars on the left hand side of the cars which would prevent passengers from getting off on that side as they were accustomed to do. The evidence thus offered was excluded. Subsequently the defendant admitted that the construction of a fence was physically possible and practicable. We do not see why the evidence was not admissible for the purpose for which it was offered, namely, to show that having regard to the defendant's business it was practically possible at the time of the accident to have sidebars and a fence. It bore directly on the question whether in view of

the practice which was shown to exist and of which the defendant was bound to take notice, the defendant had done all that was practicable to prevent such an accident as occurred.

The case of *Marr* v. *Boston & Maine Railroad*, 208 Mass. 446, is distinguishable from this case. In that case "there was no evidence that on previous occasions the passengers had jostled or pushed each other." What occurred in the present case did not result from the sporadic act of a single individual, as suggested in *Glennen* v. *Boston Elevated Railway, supra,* which the defendant had no reason to anticipate, but was due to a practice which it was required so far as it could to prevent and guard against.

It is not contended that the plaintiff was not a passenger or not in the exercise of due care.

The result is that we think that a verdict should not have been directed for the defendant, and in accordance with the terms of the report the entry will be, judgment for the plaintiff for $1,900.

*So ordered.*

*C. H. Donahue,* (*W. T. Atwood* with him,) for the plaintiff.
*J. T. Hughes,* for the defendant.