VICTOR J. BLASING, d.b.a. VIC'S BARBER SHOP, AND OTHERS v. P. R. L. HARDENBERGH COMPANY AND OTHERS. PHIL SAMPSON INTERIORS, INC. v. P. R. L. HARDENBERGH COMPANY AND ANOTHER.

226 N. W. 2d 110.

January 31, 1975—No. 44609.

*Shanedling, Phillips, Gross & Aaron, Allen H. Aaron,* and *Richard T. Wylie,* for appellants.

*Robins, Davis & Lyons, A. James Anderson,* and *Robert M. Wattson,* for respondents.

Heard before Sheran, C. J., and Kelly and MacLaughlin, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, JUSTICE.

This is an appeal from the denial of an alternative motion for judgment n.o.v. or a new trial and from the judgment for some of the plaintiffs. We affirm.

Victor J. Blasing, d.b.a. Vic's Barber Shop;[1] Winton N. Petersen, d.b.a. Chicken Pete; and Sven O. Anderson, d.b.a. Anderson Hardware, (plaintiffs) were tenants in a commercial building in Minneapolis which was damaged by fire on May 3, 1968. The fire originated in a portion of the basement occupied by defendant Phil Sampson Interiors, Inc. Sampson had been using a room in the basement to remove the finish from old furniture and for this purpose made use of a flammable liquid called Kut-Koat, which is manufactured by defendant James B. Day and Company and distributed locally by defendant P. R. L. Hardenbergh Company. Plaintiffs brought an action against Phil Sampson Interiors, Inc., and P. R. L. Hardenbergh Company for damages caused by the fire. Sampson brought a similar action against Hardenbergh and James B. Day and Company. These actions were consolidated for trial. The jury returned a special verdict ascribing 65 percent of the causal negligence to Sampson and 35 percent of the causal negligence to Hardenbergh and Day. Sampson has not appealed and the issues before us are those raised by defendants Hardenbergh and Day.

Steven C. Johnson, an employee of Sampson, was removing the finish from an old table on the day of the fire. Although Johnson had trouble recalling the particular remover he used that day, both he and Phil Sampson, the sole shareholder of Sampson, testified that Kut-Koat was the only remover ever used

---

[1] Blasing's action was dismissed for failure to prove damages.

by Sampson. Johnson was working close to the center of the basement room over a floor drain. Approximately 15 feet distant from the working area were two gas water heaters, each having a separate pilot light. Approximately 12 feet away was a furnace with an open flame. There was a bathroom opening off the workroom, and a 2-foot by 2-foot fan in the bathroom window provided the only ventilation in the basement area. In the course of removing the finish from the table, Johnson applied Kut-Koat on the table with a brush. After the finish had softened he removed the finish with a putty knife and washed the liquid down the floor drain with warm water. While he was working with his back to the water heaters, Johnson heard a "poof" sound and turned to see the floor "light up" with the flames approaching from the direction of the water heaters.

Edward O. Locke, an expert witness called by plaintiffs, testified that in his opinion the fire was directly caused by the use of Kut-Koat. Locke testified that, as is true with all flammable liquids, it is not the liquid itself but the vapors given off by the liquid that burn. The lowest temperature at which a combustible liquid will give off sufficient vapors to be ignited by a source of ignition is called the flashpoint. The flashpoint of Kut-Koat is below 20° F. It is therefore constantly giving off flammable vapors at room temperature. If these vapors reach a certain concentration in the air and come in contact with a source of ignition, they will ignite with a flame front radiating away from the source of ignition until all the vapors are burned. The fire will then remain at the liquid which is giving off the vapors. Since the flame front often travels at speeds approaching or exceeding the speed of sound, a "poof" sound will be heard. It was Locke's opinion that because the room was inadequately ventilated the vapors were able to form in sufficient concentration to ignite. He also stated that the vapors concentrated along the floor and were drawn by air currents toward the water heaters, where they were ignited by the pilot lights. It was his opinion that the use of warm water to wash the table further increased the chance

of fire since it increased the rate of evaporation of the Kut-Koat.

Plaintiffs argued that defendants Day and Hardenbergh were negligent in labeling Kut-Koat because there was insufficient warning affixed to the Kut-Koat can of the danger of fire presented by the vapors. It is not clear from the record exactly what warning appeared on the can of Kut-Koat in use on the day of the fire. Phil Sampson testified that each 5-gallon can he used up until the date of the fire contained a single white label with red lettering. Several employees of defendants, however, testified that up until the time of the fire every can of Kut-Koat contained the following label, which consists of black lettering on a red background:

Keep
AWAY
From FIRE
HEAT and OPEN-flame
LIGHTS

CAUTION

LEAKING Packages Must be Removed to a Safe Place

DO NOT DROP

This is to certify that the contents of this package are properly described by name and are packed and marked and are in proper condition for transportation according to the Regulations prescribed by the Interstate Commerce Commission.

Phil Sampson denied that the black-on-red label appeared on any can of Kut-Koat purchased before the fire by his company. He also testified that it had been some years since he last read the Kut-Koat labels, and that he had not noticed any changes or apparent changes in the label for some time before the fire. Sampson also stated that he was not aware that the vapors presented any danger of fire and that he did not consider the room to be inadequately ventilated under the circumstances. Steven Johnson testified that he was not familiar with vapors, but did not know or believe that the vapors themselves were flammable. He also testified that he had read the Kut-Koat label some months previous to the fire.

Defendants further contend that all cans of Kut-Koat contained a yellow-and-black label that warned that the product should be used only with adequate ventilation. However, a study of the text of this particular label indicates that the warning was given in the context of the danger presented by breathing the vapors and not the danger presented by the flammable nature of the vapors. In any event, Phil Sampson testified that the yellow-and-black labels appeared only on cans of Kut-Koat purchased after the fire.

Defendants raise several issues on appeal: (a) Did defendants negligently fail to give adequate warning to users of Kut-Koat of the hazards connected with its use? (b) If so, was such negligence a proximate cause of the fire and the resulting damage to plaintiffs? (c) Were defendants in full compliance with certain statutory provisions concerning the labeling and care required in the use of inflammatory products, and if so, were they free from negligence as a matter of law? (d) Did the trial court err in refusing to give certain requested instructions?

■ Plaintiffs claim that defendants were negligent in failing to give adequate warning to users of the fire hazards associated with the vapors given off by Kut-Koat. Defendants contend that the evidence shows that the cans of Kut-Koat in use at the time of the fire displayed the black-on-red and yellow-and-black labels

described above and that the warnings contained on these two labels satisfied defendants' duty to plaintiffs as a matter of law.

Defendants cite three cases from the United States Court of Appeals for the Seventh Circuit as support for their argument that defendants should be held not negligent as a matter of law. Moschkau v. Sears, Roebuck & Co. 282 F. 2d 878 (7 Cir. 1960); Borowicz v. Chicago Mastic Co. 367 F. 2d 751 (7 Cir. 1966); Murray v. Wilson Oak Flooring Co. Inc. 475 F. 2d 129 (7 Cir. 1973). However, we have studied these cases and find they may be distinguished either because the labels contained more explicit warnings than were contained on the labels herein or because the facts showed a clear failure on the part of the plaintiff to heed the warning given.

Our review of this record compels us to conclude that sufficient evidence was presented to require a jury determination of the adequacy of the warning given by defendants. Sampson testified that there was a single label on the cans he used up to the time of the fire but that it contained a warning similar to the black-on-red label which defendants claim was on the can in use at the time of the fire. He also testified that the black-and-yellow label did not appear on cans purchased before the fire. None of the labels clearly warns that vapors are flammable or ignitable as such. A reasonable person could conclude that the language used on the labels was not sufficient to alert the user that the vapors were flammable and that precautions should be taken even though the fluid itself was several feet from the nearest flame. Conflicts in the evidence are to be resolved by the jury, and on appeal this court must review the evidence and the inferences to be drawn therefrom in the light most favorable to the prevailing party. Botz v. Krips, 267 Minn. 362, 126 N. W. 2d 446 (1964). Viewing the evidence in the light most favorable to plaintiffs, we hold that it is sufficient to support the jury's determination that defendants were negligent.

■ Defendants state that their alleged negligence in failing to give adequate warning to users of the fire hazards of vapors

was not the proximate cause of the fire. They argue that the evidence shows that Phil Sampson and Steven Johnson were experienced and knowledgeable users of Kut-Koat and therefore knew of the dangers involved. In considering this issue, it should be kept in mind that the jury ascribed 65 percent of the total negligence to Phil Sampson Interiors, Inc., and it did not appeal from that determination.

Defendants cite Mulder v. Parke Davis & Co. 288 Minn. 332, 181 N. W. 2d 882 (1970), in which we held that when a physician who prescribes a dangerous drug is fully aware of its potential lethal effects the failure of the manufacturer to warn the doctor of its hazards is not a proximate cause of the injury or death to a third person resulting from use of the drug. However, in Mulder, the defendant doctor testified that he knew of the dosage recommended by the manufacturer of the drug, but chose not to be governed by it. He was also aware that misuse of the drug could cause the complications which resulted in his patient's death. We held this knowledge by the doctor was sufficient to cut off liability of the manufacturer where the only issue is the failure to communicate a warning. In the same manner, in Hill v. Wilmington Chemical Corp. 279 Minn. 336, 156 N. W. 2d 898 (1968), we held that the failure of a supplier of a chemical component of an end product to warn the synthesizer of the product of dangers of which the synthesizer was already aware was not the proximate cause of injury to the product's ultimate consumer.

In our judgment neither Mulder nor Hill are controlling in this case. While it is true that both Sampson and Johnson had used Kut-Koat extensively in the past, each testified that he was unaware of the danger of fire associated with the vapors. Past experience with a product does not necessarily alert users to all of the dangers associated with the product. The record discloses sufficient evidence to support a jury determination that Sampson and Johnson did not know the vapors were flammable.

Defendants also argue that Sampson and Johnson had not re-

cently read the labels attached to the product and that therefore a more detailed warning could not have been effective in preventing the fire damages. However, there is evidence that both had read the label at some point in time and that the label on the can at the time of the fire, even accepting defendants' version of the warning contained thereon, was not sufficiently different from earlier warnings. None of the labels specifically warned of the flammable nature of the vapors. Again, the question of proximate cause was one properly submitted to the jury, and the evidence supports its finding that defendants' negligence proximately caused plaintiffs' damage.

■ Defendants have cited certain Federal regulations and ordinances of the city of Minneapolis, which prescribe standards for flammable products regarding labeling, ventilation, sources of ignition, and related topics.[2] They contend that the black-on-red label, which defendants allege was affixed to the can of Kut-Koat at the time of the fire, was in full compliance with these regulations and ordinances and that, therefore, they were not negligent as a matter of law. Even assuming that this particular label was affixed on the can in question, and there is evidence to the contrary, the fact that a person causing an accident has complied with a statute or ordinance regulating conduct under the circumstances is not conclusive that he was in the exercise of due care. 13B Dunnell, Dig. (3 ed.) § 6976(3). As stated in Prosser, Torts (4 ed.) § 35, p. 203:

"* * * The statutory standard is no more than a minimum, and it does not necessarily preclude a finding that the actor was negligent in failing to take additional precautions."

By the same reasoning, the failure to show that defendants were not in violation of an ordinance or statute does not preclude a finding of common-law negligence.

_____

[2] 49 CFR § 173.405 (1973). Minneapolis Code of Ordinances, §§ 685.040 and 685.060. The Minneapolis ordinances were read to the jury by the trial court.

Defendants argue that the trial court erred in refusing to give several suggested instructions regarding the effect of the Federal regulations and municipal ordinances. We have reviewed the proposed instructions, as well as the instructions given by the trial court, and hold that the trial court adequately and properly instructed the jury and did not err in refusing to give the proposed instructions.

Affirmed.