CHARLES F. FEGAN & another[1] vs. LYNN LADDER CO., INC.

Norfolk.    March 14, 1974. — February 12, 1975.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Negligence,* Manufacturer, Dangerous article, Ladder, Assumption of
    risk.   *Practice, Civil,* Exceptions: failure to save exception.

In an action against the manufacturer of an extension ladder for per-
    sonal injuries sustained when the ladder broke as it was being used
    with a ladder jack to support a plank on which the plaintiffs were
    standing, evidence that the defendant's president knew that exten-
    sion ladders frequently were used with jacks and scaffolding and
    that ladders like the broken one were not safe for such use warranted
    a finding that the defendant was negligent in failing to warn against
    incorporating the ladder into scaffolding even though the defendant
    warned against use of the ladder by more than one person at a time.
    [62-64]
In an action for personal injuries sustained when an extension ladder
    broke as it was being used to support scaffolding on which the plain-
    tiffs were standing, the jury were not required to find that the plain-
    tiffs' admitted violation of the manufacturer's warning with respect
    to the angle at which the ladder should be placed was negligence or
    that it was responsible for the breaking of the ladder where it was
    not clear that the warning was concerned with anything but the
    stability of the ladder.  [64]
A defendant who took no exception to the recording of verdicts in a
    tort action was precluded from arguing on appeal that the jury's
    affirmative answer to a special question concerning the plaintiff's
    assumption of the risk was inconsistent with their general verdict
    for the plaintiff.  [64-65]

TORT. Writ in the Superior Court dated November 3,
1969.

The action was tried before *Ford, J.*

*George J. Shagory (Robert A. Grimes with him)* for the
defendant.

*Albert P. Zabin* for the plaintiffs.

---

[1] James H. Allen.

ARMSTRONG, J. This is an action for personal injuries sustained by the plaintiffs when a ladder manufactured by the defendant broke. The ladder had supported one end of an aluminum plank on which both plaintiffs were standing while painting the side of a house. A jury returned verdicts for both plaintiffs and, by their answers to special questions, found that the defendant was not negligent in the manufacture of the ladder but was negligent "with respect to warnings or instructions as to the use of the ladder." They also found that neither plaintiff was contributorily negligent, and that the plaintiff Fegan had not assumed the risk of injury. They found that the plaintiff Allen, however, had assumed that risk. The case is before us on the exceptions of the defendant to the judge's refusal to direct verdicts in its favor against each plaintiff and his refusal to enter such verdicts under leave reserved.

There was evidence that the ladder had been purchased by Allen's father, who was a painter by trade and a licensed rigger, in April, 1968. It was a twenty-four foot extension ladder and had been in more or less continuous use from that time until December 12, 1968, as one of three such ladders used by the three men (Fegan, Allen, and Allen's father) on a housing project. It was generally stored in garages at night, although occasionally it was left outdoors on sawhorses. The ladder was intended for commercial use, being of a heavier construction than some ladders sold for home use, and had a normal life expectancy of three years if subjected continuously to the normal wear and tear expected in commercial use.

On December 12, 1968, the three men erected a scaffold consisting of an eighteen foot aluminum plank supported on the right by a trestle ladder set on a porch and on the left by a ladder jack attached to the extension ladder. The extension ladder was raised to a height of eighteen feet. It was set in the ground eight or nine feet from the foundation. The upper hooks of the jack gripped the rails of the ladder just above the second rung from the top. The bottom of the jack rested on, and hooked around the rails just above, the fourth rung. Allen had set up the extension lad-

der, checked it for safety, and affixed the jack. Fegan had set up the trestle ladder, and both had inserted the plank. Allen climbed the extension ladder and started to paint standing on the left portion of the plank. Fegan climbed up the trestle ladder and worked from the right portion of the plank. About five minutes after they started painting, the rails of the extension ladder broke at the second rung. The upper portion of the ladder fell to the ground, and the lower portion fell in against the house. The top hooks of the jack released, and the left end of the plank fell to the ground. Both Allen and Fegan fell to the ground and were injured.

There was evidence to the effect that ladder jacks were in customary use by commercial painters at the time and that the president of the defendant had reason to know and did in fact know that extension ladders such as the one involved in this case would be used with jacks. There was testimony by an expert witness called by the defendant from which the jury might have found that ladders of the dimensions, materials, and construction of the broken ladder are not sufficiently strong to be safe for use with ladder jacks. There was further evidence that an organization called the American Ladder Institute, of which the defendant was a member and the defendant's president was secretary, had participated in writing and sponsoring a ladder safety code, and that one of the sections of that code stated that ladders of the materials and dimensions of the ladder which broke "should not be used by more than one man at a time nor with ladder jacks and scaffold planks where use by more than one man is anticipated." It was not disputed that the only warnings given by the defendant to users of its ladders appeared on a label stuck to the ladder which read in relevant part, "When erecting extension ladder, place at 75½° angle so that bottom is away from vertical resting point one-quarter of extended length of ladder .... A ladder is meant to carry only one person at a time. Do not overload."

We are of the opinion that the judge was not in error in

permitting the jury to find from this evidence that the defendant was negligent in failing to give explicit warnings about a foreseeable and anticipated use of its ladder which it knew or should have known to be fraught with a danger not apparent to its anticipated users. A manufacturer is under a duty "adequately [to] warn of foreseeable and latent dangers attendant upon proper and intended use of his product." *Land O'Lakes Creameries, Inc.* v. *Hungerholt,* 319 F. 2d 352, 360 (8th Cir. 1963), quoting Frumer and Friedman, Products Liability, § 8.01. *Tomao* v. *A. P. De Sanno & Son, Inc.* 209 F. 2d 544, 546 (3d Cir. 1954) (a diversity case applying Massachusetts law). *Post* v. *American Cleaning Equip. Corp.* 437 S. W. 2d 516, 520 (Ky. 1969). In *West* v. *Broderick & Bascom Rope Co.* 197 N. W. 2d 202 (Iowa, 1972), a manufacturer of a wire rope sling was held liable for injuries caused by its breaking where it "knew or had reason to know that the sling was or was likely to be dangerous for the use for which it was supplied if warning of working capacity was not given." *Id.* at 209. The same principle was applied in *Tomao* v. *A. P. De Sanno & Son, Inc., supra,* where a grinding wheel flew apart while being operated by the plaintiff at 10,000 revolutions per minute, and the manufacturer had failed to warn that the maximum safe operating speed was 5,729 revolutions per minute.

These cases are applications of the general principle set forth in *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96 (1946): "In principle, a manufacturer or other person owning or controlling a thing that is dangerous in its nature or is in a dangerous condition . . . to his knowledge . . . who deals with or disposes of that thing in a way that he foresees or in the exercise of reasonable care ought to foresee will probably carry that thing into contact with some person, known or unknown, who will probably be ignorant of the danger, owes a legal duty to every such person to use reasonable care to prevent injury to him." The duty of a manufacturer to warn against a foreseeable use of his product involving a hazard not apparent to the user has also

been recognized in *Farley* v. *Edward E. Tower Co.* 271 Mass. 230, 237 (1930), and *Haley* v. *Allied Chem. Corp.* 353 Mass. 325, 329-330 (1967).

The warning given by the defendant, that the ladder was not to be used by more than one person at a time, had no obvious application to the foreseeable use of the ladder with jacks or other scaffolding. If it can be interpreted as having such application, the jury could find that its warning was not sufficiently explicit. It was far less explicit than the warnings held adequate in *Taylor* v. *Jacobson,* 336 Mass. 709, 716-718 (1958), and *Haley* v. *Allied Chem. Corp., supra,* or that held inadequate in *Hubbard-Hall Chem. Co.* v. *Silverman,* 340 F. 2d 402, 403, 405 (1st Cir. 1965). The jury were not required to find that the plaintiffs' admitted violation of the warning concerning the angle of the ladder was negligence or that it was responsible for the breaking of the ladder. *Ford* v. *Fitchburg R.R.* 110 Mass. 240, 261 (1872). *Brule* v. *Union St. Ry.* 315 Mass. 268, 272-273 (1943). *Tuttle* v. *McGeeney,* 344 Mass. 200, 205 (1962). Furthermore, it is not clear that the warning was concerned with anything other than the stability of the ladder. The jury could have found that the warning was not adequate to apprise a user of the danger of overstressing the ladder.

The defendant argues that the jury's affirmative answer to the question concerning Allen's assumption of the risk is inconsistent with their general verdict for Allen and that as a result the jury's verdicts must be set aside and a new trial ordered. See *Thurlow* v. *Welch,* 305 Mass. 220, 221-222 (1940). The question is not now open, because the bill of exceptions does not disclose the saving of any exceptions to the recording of the verdicts. *Phillips* v. *Larson,* 323 Mass. 87, 91 (1948). *Appleby* v. *Wallins,* 336 Mass. 35, 37 (1957). *Pritchard* v. *Mabrey,* 358 Mass. 137, 145 (1970). It may not be inappropriate to add, however, that the doctrine of assumption of the risk has no application to this case. The burden of proving voluntary assumption was on the defendant (*Stewart* v. *Roy Bros. Inc.* 358 Mass. 446, 453 [1970]), and the defendant failed to sustain that burden, as there was no evidence adduced that the danger inherent in the

use of a ladder jack with the extension ladder was known to either of the plaintiffs or should have been obvious to them. *Barrett* v. *Builders' Patent Scaffolding Co.* 311 Mass. 41, 44-46 (1942).

*Exceptions overruled.*