ANTONIO FIORENTINO & another[1] *vs.* A. E. STALEY
MANUFACTURING COMPANY.

Middlesex. December 18, 1980. — February 24, 1981.

Present: ARMSTRONG, GREANEY, & DREBEN, JJ.

*Negligence,* Manufacturer, Adhesive, Duty to warn, Adequacy of warn-
ing. *Evidence,* Relevancy and materiality, Post-accident safety im-
provements.

In an action by plaintiffs who were injured in an explosion which oc-
curred while they were working with a fast-drying contact adhesive
manufactured and sold by the defendant, there was sufficient evidence
to warrant findings that the warning on the product's label that the
adhesive should not be used "near fire or flame" and should be kept
away from "open flame" was inadequate to inform the plaintiffs of the
dangers in using the product near a closed and concealed pilot light
and that the plaintiffs' past experience in using the adhesive was not
such as to obviate the defendant's duty to warn. [433-436] ARM-
STRONG, J., concurring.

In an action by plaintiffs who were injured in an explosion which oc-
curred while they were working with a fast-drying contact adhesive
manufactured and sold by the defendant, there was no error in admit-
ting in evidence two pre-accident internal memoranda of the defend-
ant which advised of the need for adopting better warnings for the
product's label; nor was there error in the admission of labels adopted
by the defendant subsequent to the accident which contained more ex-
plicit warnings than were on the product when it was used by the
plaintiffs; nor was there error in the admission of a pre-accident label
from one of the defendant's products containing a stronger warning or
a post-accident company letter suggesting that better warnings were
necessary. [437-438] ARMSTRONG, J., concurring.

TORT. Writ in the Superior Court dated October 7,
1970.

The case was tried before *Good,* J., and *Young,* J.

*John J. C. Herlihy* for the defendant.

[1] Gino DeSimone.

*Leonard Glazer* (*David Lewis Feld* with him) for the plaintiffs.

GREANEY, J.  On April 18, 1969, the plaintiffs, Antonio Fiorentino and Gino DeSimone, were seriously injured in an explosion which occurred while they were working with a product manufactured and sold by the defendant A.E. Staley Manufacturing Company (Staley) under the trade name of Bondrite Contact Cement CC-60 (Bondrite CC-60).  At the time of the accident, the plaintiffs were using the product to attach formica to a kitchen wall.  They sought damages for negligence on the theory that Staley had failed to furnish adequate warnings of certain dangers inherent in the product's use.  A jury returned verdicts in the plaintiffs' favor.  Staley maintains that its motion for a directed verdict should have been allowed because the warnings on the product's label were adequate and because there was no duty to warn the plaintiffs in circumstances where they knew or should have known of the dangers involved in the product's use.  Alternatively, Staley seeks a new trial because of the admission of certain evidence pertaining to its knowledge and ability to warn of certain risks. We affirm the judgments.

In evaluating the judge's denial of the motion for a directed verdict, we adopt the view of the evidence most favorable to the plaintiffs (*Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 282 [1978]) to determine whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978).  *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 876 (1978).

Bondrite CC-60 is a fast-drying contact adhesive especially noted for its ability to bond decorative laminates such as formica to various surfaces.  The product's chemical make-up consists of seventy to seventy-nine percent flammable solvents which evaporate quickly.  Since these solvents have a flashpoint of less than twenty degrees Fahrenheit, the

product is classified as extremely flammable. Staley knew that application of the cement over a large area, like a kitchen wall, would cause its solvents to vaporize and that the vapors, being heavier than air, would fall to the floor.

Fiorentino, an experienced carpenter, had frequently purchased and used Bondrite CC-60 in his woodworking business. On April 18, 1969, Fiorentino and DeSimone were installing formica in a kitchen using a five-gallon container of the cement. Fiorentino had familiarized himself with the contents of the label on the container which, insofar as pertinent, contained the following information:

> "CAUTION: FLAMMABLE MIXTURE. DO NOT USE NEAR FIRE OR FLAME
> ". . . .

> "CAUTION: WARNING! EXTREMELY FLAMMABLE! TOXIC! CONTAINS: NAPHTHA, ACETONE AND METHYL ETHYL KETONE.

> "Although this adhesive is no more hazardous than dry cleaning fluids or gasoline, precautions must be taken. USE WITH ADEQUATE VENTILATION. Keep away from Heat, Sparks and Open Flame. Avoid prolonged contact with skin and breathing of vapor. Keep container tightly closed when not in use."

Because the label called for proper ventilation, Fiorentino opened three kitchen windows and removed the back door. He also opened the storm door and a few storm windows on a porch near the kitchen. No one was permitted to smoke. There was a gas stove located in a recessed area of the kitchen. Fiorentino observed that its burners were off and that there was nothing on the stove's top. He did not observe that the bottom rear of the stove contained a concealed pilot light about three to four inches off the floor which, because of its position with the cover closed, could not be seen. The workers were preparing to attach a four-by-ten foot piece of formica to the kitchen wall at a point

about seven to eight feet away from the stove. They opened
the Bondrite CC-60 container and applied the cement to the
wall and to the back of the formica piece. About five min-
utes after the container had been opened, there was a "big
noise . . . wham . . . like [an] explosion." A flame came di-
rectly from the grill work at the bottom of the right side of
the stove, travelled across the kitchen and ignited the ce-
ment on the formica piece. Both plaintiffs were badly
burned. The probable cause of the explosion and flash fire
was flammable vapors from the cement being drawn into
the draft of the oven and ignited by the pilot light.[2] Up to
the time of the incident, Fiorentino had never turned pilot
lights off while using the cement and no one had ever talked
to him about turning them off.

The manager of Staley's adhesive laboratory testified that
Bondrite CC-60 was expected to be used in formica installa-
tions in kitchens, that special precautions, which would not
be known to the average person, were followed in an indus-
trial environment to guard against accidental ignition of the
vapors,[3] and that his company had known prior to the inci-
dent that pilot lights could ignite the vapors and cause ex-
plosions and flash fires. This witness described the product
as "inherently dangerous," particularly when its solvents
evaporated. An internal company memorandum dated
February 14, 1969, was introduced which stated: "[D]ue
to the inherent danger involved with the sale and use of this
cement . . . [Staley] should be in compliance with [certain
Federal labelling] standards, or better, if possible."[4]

---

[2] According to the witness who testified on this point, the heavier-than-
air vapors were lying on the floor and were not picked up by the air ex-
change from the open windows which were at counter level. After the
vapors flowed into the draft of the oven and were ignited, the flame
flashed back following the vapors (like a wick) to the plaintiffs.

[3] Exhaust vents were installed along the floor to pick up vapors that had
settled. In the factory, grounding straps were attached to vessels contain-
ing the product being poured from one container to another to prevent the
risk of static spark.

[4] These standards would require the following information: "DAN-
GER-EXTREMELY FLAMMABLE — VAPORS MAY EXPLODE . . .
Before applying extinguish pilot lights."

There was expert testimony from which the jury could have found that the conditions prevailing at the time of the incident made ignition "almost 100 percent . . . probabl[e]" and that a worker would not have known by experience alone to extinguish a pilot light unless he understood the cement's chemical properties.

There was further evidence that the label used on the product in 1969 did not comply with voluntary standards for labelling hazardous solvents published in 1951 by the National Fire Protection Association,[5] or with similar standards set in 1961 by the Manufacturing Chemists Association,[6] and evidence that the label did not conform to an internal directive of Staley dated November 7, 1966, which required a statement that "Vapors May Explode." It was also shown that Staley had known prior to the incident that the Federal Food and Drug Administration (FDA) felt that the product should "possibly be banned as a hazardous substance" and that the FDA had furnished for Staley's voluntary consideration a more explicit warning which would advise users that all pilot lights be extinguished.[7]

There was evidence that the cement was marketed in certain geographical areas under the trade names of "Carey Contact Cement" and "Wilson Art Contact Cement." Containers of the product distributed under these trade names bore more explicit warnings, including the warning to "extinguish all flames and pilot lights." Finally, it was shown that subsequent to this accident Staley changed the contents of the Bondrite label to read:

---

[5] This organization recommended use of the word "Danger" to advise that a product was extremely flammable and suggested the word "Warning" for substances that were classified as flammable.

[6] This group classified any product with a flashpoint of twenty degrees Fahrenheit or below as extremely flammable and also recommended the signal word "Danger" to advise that the product was hazardous.

[7] Because of the FDA's concern, the Adhesive and Sealant Council drafted the following label for consideration by its members, including Staley: "DANGER! EXTREMELY FLAMMABLE VAPORS MAY CAUSE FLASH FIRE . . . Vapors may ignite explosively . . . . [E]xtinguish all flames and pilot lights."

"DANGER! Extremely Flammable Vapors May Cause Flash Fires Read Carefully Cautions Below
". . . .

"DANGER! Vapors May Ignite Explosively Prevent buildup of vapors — open all windows and doors — use only with cross ventilation. Keep away from heat, sparks and open flame. Do not smoke, extinguish all flames, and pilot lights, and turn off electrically operated appliances and other sources of ignition during use and until all vapors are gone. Avoid prolonged contact with skin or repeated breathing of vapors. Close container tightly after each use. Store in a cool, well-ventilated area. CONTAINS: Naphtha, Acetone and Methyl Ethyl Ketone."

1. A manufacturer has the duty to caution purchasers of its product by way of adequate warnings of foreseeable latent dangers involved in the product's normal and intended use. *Farley* v. *Edward E. Tower Co.*, 271 Mass. 230, 233-234 (1930). *Mealey* v. *Super Curline Hair Wave Corp.*, 342 Mass. 303, 305 (1961). *Schaeffer* v. *General Motors Corp.*, 372 Mass. 171, 173-174 (1977). *Fegan* v. *Lynn Ladder Co.*, 3 Mass. App. Ct. 60, 63 (1975). *Wolfe* v. *Ford Motor Co.*, 6 Mass. App. Ct. 346, 349 (1978). See Prosser, Torts § 96, at 646-647 (4th ed. 1971); Restatement (Second) of Torts § 388 (1965); Swartz & Swartz, Products Liability in Massachusetts, 60 Mass. L. Q. 169, 174-177 (1975). "A duty to warn depends on [the manufacturer's] superior knowledge and is said to exist when one may reasonably foresee danger of injury or damage to one less knowledgeable unless adequate warning of danger is given." *Lakatosh* v. *Diamond Alkali Co.*, 208 N.W. 2d 910, 913 (Iowa 1973). See also *Uloth* v. *City Tank Corp.*, *supra* at 880-881; *Wolfe* v. *Ford Motor Co.*, *supra* at 350, and cases cited; *Sterner* v. *U.S. Plywood-Champion Paper, Inc.*, 519 F.2d 1352, 1353-1354 (8th Cir. 1975). Furnishing instructions designed to make the product's use more efficient will not necessarily

discharge the duty to warn; the manufacturer still must call attention to the dangers to be avoided. *Williams* v. *Brown Mfg. Co.*, 93 Ill. App. 2d 334, 361-362 (1968), rev'd on other grounds, 45 Ill. 2d 418 (1970). *Bituminous Cas. Corp.* v. *Black & Decker Mfg. Co.*, 518 S.W.2d 868, 873 (Tex. Civ. App. 1974). Restatement (Second) of Torts, *supra* § 388(c). 1 Frumer & Friedman, Products Liability § 8.05[1] (1980). "Further, the forcefulness of the warning must be commensurate with the dangers involved" (*Wolfe* v. *Ford Motor Co., supra* at 350) — the greater the foreseeable risk of serious injury, the greater the duty to furnish warnings that bring home the consequences that might follow from not taking certain precautions in connection with the product's use. See *Tucson Indus., Inc.* v. *Schwartz,* 108 Ariz. 464, 469 (1972); *Libby-Owens Ford Glass Co.* v. *L. & M. Paper Co.,* 189 Neb. 792, 800-801 (1973); *DePree* v. *Nutone, Inc.,* 422 F.2d 534, 537 (6th Cir. 1970); *Murray* v. *Wilson Oak Flooring Co.,* 475 F.2d 129, 132-133 (7th Cir. 1973). See also Rheingold, The Expanding Liability of the Product Supplier: A Primer, 2 Hofstra L. Rev. 521, 532-533 (1974); Keeton, Products Liability — Inadequacy of Information, 48 Tex. L. Rev. 398, 402 (1970). "[L]ike most questions bearing on negligence, [the issue of the warning's adequacy] is ordinarily for the jury." *Lakatosh* v. *Diamond Alkali Co., supra* at 913. Dillard & Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va. L. Rev. 145, 168-169 (1955).

We hold that it was for the jury to determine whether the label on the Bondrite CC-60 five-gallon container was adequate to inform the plaintiffs of the dangers of a serious accident which might result from the cement's use near a closed and concealed pilot light. *H. P. Hood & Sons* v. *Ford Motor Co.,* 370 Mass. 69, 75 (1976). *Wolfe* v. *Ford Motor Co., supra* at 350. We also conclude that the jury's determination that the warning was insufficient was warranted by the evidence. Staley stood in a superior position with respect to the characteristics of Bondrite CC-60. The company knew that the product was inherently dangerous

and that its vapors could explode and cause a flash fire if ignited by a pilot light. Moreover, prior to this accident, Staley had come into the possession of a considerable body of information from various sources that the contents of the label on the five-gallon container were inadequate to warn of the degree of danger posed by a pilot light. There was language available which provided a straightforward warning of this risk. Despite this knowledge, Staley engaged in the inexplicable practice of putting better warnings on some containers of the product but not on others. The jury could have determined that the information that "caution" was advised, that the cement should not be used "near fire or flame," and that it should be kept away from "open flame" was qualitatively insufficient to warn the plaintiffs about the high risk of explosion and fire incident to vapors seeping from the exposed adhesive, falling to the floor, traveling some distance along the floor and being drawn by the draft of an oven into contact with a pilot light. The jury could also have found that the plaintiffs heeded the instructions on the label by adequately ventilating the kitchen, by not smoking and by checking the area for any sign of "open flame." In particular they could have found that the critical warning ("near fire or flame") was too oblique to alert someone that a closed pilot light about eight feet away was an imminent source of peril. Cf. *Murray* v. *Wilson Oak Flooring Co.*, 475 F.2d 129, 132-133 (7th Cir. 1973). Thus, a conclusion that Staley should have used the explicit language that had been suggested to it (and which was already in use on some of its products) in order to discharge its duty to warn was warranted by the evidence.

Staley points to the plaintiffs' past experience with the product, their knowledge that it was flammable, and their awareness that the kitchen contained a gas stove, as obviating any duty to warn. Thus it contends that while the warnings might have been insufficient to advise a consumer of the risks involved, they were adequate to alert a professional user. We believe, on the evidence, that this issue was also one for the jury to resolve.

It is true that a manufacturer or seller of a product is not under a duty to warn of product-connected dangers that are obvious — or to give warnings to someone who already knows of the product's hazardous propensities. See *Parker* v. *Heasler Plumbing & Heating Co.*, 388 P.2d 516, 518 (Wyo. 1964); *Fisher* v. *Johnson Milk Co.*, 383 Mich. 158, 160 (1970); *Jamieson* v. *Woodward & Lothrop*, 247 F.2d 23, 26 (D.C. Cir.), cert. denied, 355 U.S. 855 (1957); 1 Frumer & Friedman, *supra* § 8.04; Noel, Manufacturer's Negligence of Design or Directions for Use of a Product, 71 Yale L. J. 816, 836-841 (1962). See generally discussion in *Uloth* v. *City Tank Corp., supra* at 879-881. Past experience with a product, however, will not necessarily alert users to all of the dangers associated with it (*Blasing* v. *P.R.L. Hardenbergh Co.*, 303 Minn. 41, 47, 48, 49 [1975]), and it is now a generally settled principle of product liability law that a manufacturer who undertakes to advise users as to the proper method of handling his product must provide complete and accurate warnings respecting inherent dangers. See *DePree* v. *Nutone, Inc., supra* at 537; 2 Hursh & Bailey, American Law of Products Liability § 8.19, at 193 (2d ed. 1974). On the evidence in this case, it could not be held as a matter of law that the plaintiffs' past experience with Bondrite CC-60 was such that they should have known, despite the information on the label, that a concealed pilot light could cause an explosion.[8]

---

[8] See *Bean* v. *Ross Mfg. Co.*, 344 S.W. 2d 18 (Mo. 1961) (jury question whether warnings needed on a drain solvent despite plaintiff's practical experience with the product as a licensed plumber); *Post* v. *American Cleaning Equip. Corp.*, 437 S.W. 2d 516 (Ky. 1968) (jury question whether label on a vacuum cleaner that it could explode used on 115 volts AC or DC warned plaintiff that it could explode if used in an industrial job on 220 DC); *Blasing* v. *P.R.L. Hardenbergh Co.*, 303 Minn. 41 (1975) (for jury to decide whether workmen who had used a liquid finish remover extensively in the past were adequately warned about a danger of fire associated with its vapors by a label which stated: "Keep away from fire, heat and open-flame, lights"); *Burch* v. *Amsterdam Corp.*, 366 A.2d 1079 (D.C. App. 1976) (question of fact whether label that did not advise to extinguish pilot lights was adequate to warn of flammable vapors despite warning not to use "near fire or flame"). See also *Everett*

2. Staley claims reversible error in the admission of six documentary exhibits. The first two (exhibits 27 and 30) were pre-accident internal company memoranda which advised of the possible need of adopting better warnings for Bondrite CC-60 as suggested by the FDA and the Adhesive and Sealant Council. The primary objection at trial was that these exhibits were irrelevant because they addressed labelling requirements under the Federal Hazardous Household Substances Act (15 U.S.C. §§ 1261-1274[9] [1976]), a statute chiefly concerned with consumer products. The exhibits were relevant to Staley's knowledge that its warnings might be inadequate and to the feasibility of using stronger language to strengthen them. A manufacturer cannot turn a deaf ear to advice from collateral sources that will make use of one of its products safer. Based on the fact that the language in the memoranda stressed needed precautions (acknowledged in one instance by three Staley officials as suitable for "our use"), admission of the exhibits fell within the judge's discretion. Staley's concern that the jury might possibly misuse the evidence was countered by a clear instruction from the judge in his closing charge that there was no evidence that Staley's labeling violated any Federal or State law or regulation.

Two other exhibits (31 and 32) were labels adopted by Staley subsequent to the accident (see *supra* 433) which contained more explicit warnings. Staley contends that ex-

---

v. *Bucky Warren, Inc.,* 376 Mass. 280, 289-290 (1978) (holding in a negligent design case that "the question of contributory negligence is rarely to be taken from the jury and decided as matter of law."). We are not inclined to follow *Borowicz* v. *Chicago Mastic Co.,* 367 F.2d 751 (7th Cir. 1966), for the reasons stated in *Murray* v. *Wilson Oak Flooring Co.,* 475 F.2d 129, 132-134 (7th Cir. 1973), a later decision from the same circuit and because of the distinctions outlined as to both cases in *Blasing* v. *P.R.L. Hardenbergh Co., supra* at 47. See as well discussion at 2 Hofstra L. Rev. 532-533.

[9] Section 1274 was added to this Act after the accident; however, the parties appear to have litigated the case as if it were in effect at the time of the accident; in any case, the section is not relevant to the issues on appeal.

clusion was required because of the general rule prohibiting evidence of postaccident improvements as an admission of negligence and because "[t]he infinite permutations of language make possible an infinite number of changes and therefore a change in words of warning is always possible." We think that the evidence was properly admitted in the judge's sound discretion. As previously noted, there was considerable evidence that Staley knew of the need for a warning about pilot lights and that such a warning had been included on some labels. In the circumstances, the evidence of the change in warning was admissible as additional proof of "the feasibility of eliminating [the] unclear warning of the earlier date, which the jury found to be a causative factor in producing . . . [the condition]." *Love* v. *Wolf,* 249 Cal. App. 2d 822, 831 (1967). *Schaeffer* v. *General Motors Corp.,* 372 Mass. 171, 175-176 (1977). See *Sterner* v. *U.S. Plywood-Champion Paper, Inc.,* 519 F.2d 1352, 1354 (8th Cir. 1975), and cases cited. Cf. *Beverley* v. *Boston Elev. Ry.,* 194 Mass. 450, 458 (1907); *Coy* v. *Boston Elev. Ry.,* 212 Mass. 307, 309-310 (1912); *doCanto* v. *Ametek, Inc.,* 367 Mass. 776, 780 (1975). We also note that the judge cautioned the jury as to the role this evidence could play in their analysis.

The last two exhibits challenged — a pre-accident label from one of Staley's products containing a stronger warning (exhibit 33) and a postaccident company letter suggesting that better warnings were necessary (exhibit 46) — were properly admitted for the reasons we have already discussed.

*Judgments affirmed.*


ARMSTRONG, J. (concurring). The practice of admitting postaccident design changes to show the feasibility or practical possibility of an improved design arose out of cases involving physical improvements to products or premises. See, e.g., *Beverley* v. *Boston Elev. Ry.,* 194 Mass. 450, 458 (1907); *Coy*

v. *Boston Elev. Ry.*, 212 Mass. 307, 309-310 (1912); *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 780 (1975). In the sphere of physical improvements the notion of "feasibility" has a meaning and relevance which it lacks in the area of changes in warnings, for it is obviously always "feasible" to employ a more prominent or more urgent-sounding or more particularized form of warning. But in *Schaeffer* v. *General Motors Corp.*, 372 Mass. 171, 175-176 (1977), the concept of feasibility was extended into the area of warnings to justify the admissibility of postaccident changes, and that decision controls the same evidentiary point in the instant case.

As to our holding that the jury could properly find the earlier warning inadequate, it bears emphasis that the holding rests on something more substantial than mere size of type or number of exclamation points: namely, the qualitative insufficiency of the warning to inform the user of the gasoline-like tendency of the cement to form heavier-than-air vapors which, unless dispersed, will flow in an invisible stream to distant sources of ignition.