DAVID M. COCCO vs. DELUXE SYSTEMS, INC.,
& another.[1]

No. 86-1276.

Suffolk.   October 14, 1987. — December 11, 1987.

Present: GRANT, WARNER, & FINE, JJ.

*Negligence*, Manufacturer, Defective product, Design, Proximate cause,
Duty to warn, Adequacy of warning. *Uniform Commercial Code*, War-
ranty. *Warranty. Proximate Cause. Evidence*, Relevancy and material-
ity. *Practice, Civil*, Instructions to jury.

At the trial of claims resulting from alleged breach of an implied warranty
of merchantability under G. L. c. 106, § 2-314, in which there was
expert testimony that the presence of an unguarded switch on an industrial
shredding machine, manufactured and distributed by defendants, caused
the machine to fall below reasonable design standards and rendered it
unreasonably dangerous at the time the plaintiff, an employee of the
buyer, suffered severe injuries to his hand while cleaning the blades of
the machine, there was sufficient evidence for a jury to conclude that
the starter switch delivered with the shredder was the same type of
unguarded starter switch which was on the shredder at the time of the
accident and about which the expert testified. [153-155]
At the trial of claims resulting from alleged breach of an implied warranty
of merchantability under G. L. c. 106, § 2-314, in the sale of an indus-
trial shredding machine in which the plaintiff, an employee of the buyer,
severely injured his hand, evidence concerning certain modifications to
the machine made by the buyer between the time of delivery and the
time of the injury to the plaintiff presented a jury issue on causation and
not, as contended by the machine's manufacturer and distributor, the
occasion for a directed verdict in their favor. [155-156]
At the trial of claims resulting from alleged breach of an implied warranty
of merchantability under G. L. c. 106, § 2-314, in the sale of an indus-
trial shredding machine in which the plaintiff, an employee of the buyer,
severely injured his hand while cleaning the blades of the machine,
submission of the case to the jury, without expert testimony, on the
question of the unreasonable danger created by the failure of the defend-
ants, the manufacturer and distributor, adequately to warn the buyer's
employees of the risk of the type of accident of which the plaintiff was victim

[1] Shred Pax Corporation.

was warranted by evidence that the defendants knew for what purpose the machine was to be used, that it frequently would become jammed, that the employees who worked on the machine would have practically no operational knowledge of it, that occasionally the employees would put their hands into the machine to clean it, and that the starter switch could accidentally become engaged as a result of someone's brushing by it. [156-157]

At the trial of claims resulting from alleged breach of an implied warranty of merchantability under G. L. c. 106, § 2-314, in the sale of an industrial shredding machine in which the plaintiff, an employee of the buyer, severely injured his hand, there was no error in the judge's declining to instruct the jury, as requested by the defendants, the machine's manufacturer and distributor, that the plaintiff had the burden of proving that the accident was not the result of an unforeseeable misuse of the shredder where, although the requested instruction accurately stated the law and the judge might permissibly have given it, he was not required to do so in the absence of any evidence that the plaintiff had misused the shredder. [157]

At the trial of claims against the manufacturer and distributor of an industrial shredding machine in which an employee of the buyer, a sugar refining company, severely injured his hand, the judge acted within his discretion in denying the defendants' requested instruction on the custom and practice of the industry to use disconnect switches to avoid such accidents, where the request was based upon a mere fragment of evidence in the course of a lengthy trial. [157]

At the trial of claims against the manufacturer and distributor of an industrial shredding machine in which an employee of the buyer severely injured his hand, it was not error requiring reversal for the judge to refuse to strike from the evidence a drawing identified as being a fair and accurate representation of the shredder as it looked at the time of the accident and, at least with respect to the machine's starter switch, at the time of delivery. [157-158]

CIVIL ACTION commenced in the Superior Court Department on November 20, 1979.

The case was tried before *James P. Lynch, Jr.,* J. and motions for a new trial were heard by him.

*James N. Esdaile, Jr.,* for the plaintiff.
*Joseph L. Doherty, Jr.,* for Deluxe Systems, Inc.
*Allen N. David* for Shred Pax Corporation.

FINE, J.   While cleaning the blades of an industrial shredding machine at the Revere Sugar Refinery plant where he worked, David M. Cocco, the plaintiff, suffered severe injuries to his

hand. A fellow worker had brushed up against the control switch with his knee and inadvertently activated the machine while Cocco had his hand in it. The switch on the machine at the time of the accident was a simple, unguarded on-off switch. At the trial, there was expert testimony for Cocco on the basis of which the jury could reasonably have determined that, given the manner and circumstances in which the shredder was likely to be used, its propensity to jam, and its ability to cause serious bodily injury, the presence of an unguarded switch on the shredder caused the machine to fall below reasonable design standards and made it unreasonably dangerous. Cocco commenced this action in the Superior Court against Shred Pax Corporation and Deluxe Systems, Inc., the manufacturer and distributor, respectively, of the shredder. The defendants' motions for directed verdicts were denied. The jury were instructed that liability for breach of warranty could be based either on the alleged design defect relating to the switch or on the failure adequately to warn of the danger inherent in the design of the machine. The jury found liability and awarded damages to Cocco against both defendants. The defendants' motions for judgment n.o.v. or for a new trial were denied. We find neither reversible error nor a basis for overturning the trial judge's decision to deny a new trial.

1. *The Denial of the Motions for Directed Verdicts.*

a. The principal issue both defendants raise on appeal is the adequacy of the plaintiff's proof that the shredder, in particular the starter switch, at the time of the accident in 1977 was, in material respects, in the same condition that it had been in at the time of delivery in late November, 1972. They contend that on the evidence presented it is at least as likely that a guarded starter switch was delivered with the machine but that Revere Sugar replaced it with an unguarded one.[2] Cocco, in

---

[2] The defendants also contend that, according to the evidence, Revere Sugar installed the starter switch in the wrong location on the machine, making it susceptible to the type of inadvertent contact that caused the accident. The plaintiff's expert, however, testified that the exact location of the starter switch on the shredder was immaterial. The crucial factor, he said, was the type of switch and not its location. In light of that testimony,

order to prevail on the claim of implied warranty of merchantability under G. L. c. 106, § 2-314, had the burden of proving that the defect or breach existed at the time the shredder left the hands of the defendants. See *Fernandes* v. *Union Bookbinding Co.*, 400 Mass. 27, 37-38 (1987); *Walsh* v. *Atamian Motors, Inc.*, 10 Mass. App. Ct. 828, 829 (1980). We summarize the evidence on this point in the light most favorable to Cocco. *Solimene* v. *B. Grauel & Co., K.G.*, 399 Mass. 790, 792 (1987).

The shredder and the control panel, including a starter switch, were delivered in separate packages to Revere Sugar on November 22, 1972. There was no direct eyewitness testimony or documentary evidence describing the particular switch which was delivered. The machine was set up for operation by Revere Sugar employees. No assembly instructions were provided. Cocco offered no testimony from any Revere Sugar employee involved in the installation. Although patent documents prepared in 1975, several years after delivery of the machine, depict a different type of switch, individual shredders were sold in 1972 with varying types of starter switches. John Waalewyn, at all relevant times president of Deluxe Systems, Inc., testified that he had no memory of the particular switch on the machine he sold to Revere Sugar.

Barbara Gillette, a former Revere Sugar employee, testified that she first saw the machine some time in 1972 when she was assigned to use it in her work, and that she worked with it regularly through 1978, one year after the plaintiff's injury. From a drawing which was in evidence, she identified the control panel on the shredder, and in particular the starter switch, as being the ones she first observed and the ones on the shredder throughout the period between 1972 and the date of the accident.

Representatives of both defendants visited Revere Sugar in early 1973 because of complaints that the machine was jam-

---

the jury's implicit finding either that the location of the switch was not altered by Revere Sugar or that an alteration of the location was not a material modification is supported by sufficient evidence.

ming. Adjustments were made at the time to the blades. Nothing was mentioned by either of the defendants' representatives about the starter switch, although, in the course of the inspection and repairs, the switch must have been used to activate the shredder.

We think, notwithstanding the gap in the evidence of direct observations, the jury were justified in drawing an inference that the starter switch delivered with the shredder was the same type of unguarded starter switch which was on the shredder at the time of the accident and about which the expert testified. We base this conclusion primarily on Gillette's observations, which were made at least as early, according to her testimony, as the end of 1972, reasonably close to the time of delivery, November 22, 1972. Moreover, it is to be expected in the ordinary course that the starter switch provided by the manufacturer would be the one installed. We reach our conclusion that the evidence was sufficient without the necessity of relying on the evidence of the 1973 inspection and repairs and the silence of the defendants' representatives at that time about the starter switch. We do not reach the question whether that evidence, admitted without objection, might also give rise to a reasonable inference that the starter switch in use in 1973 was the one, or similar to the one, supplied with the machine.

b. As the defendant Shred Pax correctly points out, Revere Sugar modified the machine between the time of the delivery and the time of the accident. A sieve mechanism was replaced in 1974 by a "shaker" on which the workmen climbed for the purpose of unjamming the machine. Prior to 1974 the workers climbed on the legs of the shredder in order to unjam the machine. The defendant Shred Pax argues that the addition of the shaker was a superseding cause which broke the chain of causation between any defect in the design and the plaintiff's injury. See *Carter* v. *Yardley & Co.*, 319 Mass. 92, 99 (1946). The expert witness testified, however, that the change had no material effect; whether the workmen climbed on the shaker or on the shredder itself to facilitate their efforts in unjamming the machine, there was the same risk that the unguarded switch might become engaged inadvertently while a worker had his

hand in the machine. The evidence concerning those modifications presented a jury issue on causation and not, as the defendants contend, the occasion for a directed verdict in their favor. See, e.g., *Stamas* v. *Fanning*, 345 Mass. 73, 76 (1962). The issue was properly presented to the jury on detailed and correct instructions.

c. The jury were presented with two alternative theories of breach of warranty liability; the alleged design defect and the unreasonable danger created by the failure of the defendants adequately to warn employees of the risk of the type of accident of which Cocco was victim. Both were challenged by the defendants' motions for directed verdicts. Since we do not know on which of the two theories the jury found for the plaintiff, to avoid a new trial he must show that there was sufficient evidence to support the verdict on each theory. *McInnis* v. *Tewksbury*, 19 Mass. App. Ct. 310, 314 (1985). The implied warranty of merchantability includes an assurance that the product is reasonably safe for its ordinary purposes. Consequently, the manufacturer and seller of a product they know or ought to know to be unreasonably dangerous may be obligated to warn those who foreseeably will come in contact with the dangerous product. Cf. *H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. 69, 75 (1976); *Fiorentino* v. *A.E. Staley Mfg. Co.*, 11 Mass. App. Ct. 428, 433-434 (1981).

The evidence, viewed in the light most favorable to Cocco, was that at the time of the sale the defendants knew that the shredder would be used by Revere Sugar to grind old bags of sugar, that it would frequently become jammed, that the employees who worked with it would have practically no operational knowledge, and that from time to time they would put their hands into the machine to clear it. Implicit in the design of the starter switch was the chance that it could accidentally become engaged as a result of someone's brushing by it. The potential for causing serious bodily injury was great. After the accident, prominent warnings were placed on the machine to use the disconnect switch which was located on a wall at some distance from the machine. Even if the technology of the machine was complex, the essential facts relating to the danger

were not. Despite the absence of expert testimony that a warning, in the circumstances, was required to make the shredder reasonably safe, lay persons on the jury were competent to make the judgment that the defendants at the time of the sale had that duty. *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 782 (1975).

2. *Instructions*.

a. The defendants requested but were denied an instruction that the plaintiff had the burden of proving that the accident was not the result of an unforeseeable misuse of the shredder. The plaintiff does have the burden to "prove that at the time of his injury he was using the product in a manner that the defendant seller, manufacturer, or distributor reasonably could have foreseen." *Allen* v. *Chance Mfg. Co.*, 398 Mass. 32, 34 (1986). See *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 357 n.15 (1983). In the instant case, however, there is simply no evidence that Cocco misused the shredder. It was undisputed that both jamming and that workers would use their hands to clear the jams were foreseen. Cocco was using the product in a manner that the defendants had to have foreseen. Thus, although the requested instruction accurately stated the law and the judge might permissibly have given it, he was not required to do so. See *Barnes* v. *Berkshire St. Ry.*, 281 Mass. 47, 51 (1932).

b. The judge acted well within his discretion in denying the defendants' requested instruction on the custom and practice of the industry to use disconnect switches to avoid accidents such as Cocco's. The request was based upon a mere fragment of evidence in the course of a lengthy trial and, thus, did not require a specific instruction. See *Barnes* v. *Berkshire St. Ry.*, 281 Mass. at 50, 51. Contrast *Petras* v. *Storm*, 18 Mass. App. Ct. 330, 335-336 (1984). The issue of industry custom and practice was adequately addressed in the discussion of general principles in the judge's careful and comprehensive instructions.

3. *Admissibility of the Drawing*.

It was not reversible error for the judge to refuse to strike from the evidence a drawing identified as being a fair and

accurate representation of the shredder as it looked at the time of the accident and, at least with respect to the starter switch, in 1972. See *Everson* v. *Casualty Co. of America,* 208 Mass. 214, 219-220 (1911). Compare *Alholm* v. *Wareham,* 371 Mass. 621, 631 (1976).

*Judgments affirmed.*

*Orders denying motions for judgment n.o.v. or for a new trial affirmed.*