DECISION ON DEFENDANT OWENS-ILLINOIS' MOTION FOR SUMMARY JUDGMENT
Before this Court is Defendant Owens-Illinois' (01 or Defendant) motion for summary judgment pursuant to Super.R.Civ.P. 56. The Plaintiff, James Sherman (Plaintiff), objects to the motion.
 Background
Between 1961 and 1982, Plaintiff had a job installing insulation. Among the brands of insulation that Plaintiff remembered using was a product called Kaylo, which contained asbestos. Kaylo was manufactured and distributed by OI from 1943 until 1958 when OI sold the entire product line to Owens-Corning, a separate entity. Subsequent to his retirement from the insulation business, Plaintiff became ill and instituted a suit against several manufacturers and distributors of insulation products containing asbestos to which he was exposed, including OI as the manufacturer of Kaylo.
OI now moves for summary judgment, claiming that the Plaintiff cannot meet his prima facie burden of product identification. Specifically, OI argues that, although discovery is essentially completed and the case is approaching a scheduled trial date, the Plaintiff has failed to adduce information suggesting exposure to any of its asbestos-products prior to April 1958, the time when OI sold its insulation division. Therefore, OI asserts that it cannot be responsible for any of the asbestos-related injuries claimed by the Plaintiff
However, Plaintiff alleges that prior to 1961, he used Kaylo while helping his father on a construction project at Otis Air Force Base. In response to OI's Motion, Plaintiff Sherman submitted to this Court portions of two depositions in which he testified. (Sherman Deposition, February 15, 2002, and Sherman Deposition, April 24, 1997.) In his 2002 deposition, the following dialogue took place:
 "Q. For example, you talked about Otis Air Force Base earlier, didn't you?
 A. Yes, I did.
 Q. Okay, Let's talk about that for a second. At Otis Air Force Base, What did you do?
 A. Covered pipes there.
 Q. For who or with who?
 A. With my father. That was — we worked — oh, gee, I can't think of the names now.
 * * * * *
 Q. And this was before 1961, wasn't it?
 A. Oh, yes. Yes because — no I was waiting for the house to be built, and I was out of work and my father said, Do you want to go covering for a couple of days or something like that, and I said, Yeah, I would love to.
 * * * * *
 Q. So, was that somewhere in the 50's?
 A. Yes, that was in the SO's.
 Q. And you used a product named Kaylo before, haven't you?
 A. Yes, I have used Kaylo.
 * * * * *
 Q. And you remember using this product throughout your career?
 A. Yes, I did.
 Q. And in the SO's at Otis Air Force Base?
 A. Yes, down there and I also used it at Geigy a couple of times there, too.
 * * * * *
 Q. Your lawyer asked you about Otis Air Force Base when your father was working out there.
 A. Yes.
 * * * * *
 Q. Do you remember, as you sit here today, what year that was?
 A. No, I can't, it was in the late SO's, though.
 Q. Could it have been 1959?
 A. No, it wasn't that close, I don't think.
 Q. '58?
 A. No, because I was really carpentering then. Let's see, when was it? No. No.
 * * * * *
 Q. As you sit here today, do you know the brand names or trade names of any of the products that you used in your work at Otis Air Force Base?
 A. No, I didn't."
(Sherman Deposition, February 15, 2002 at 141-143, 15 1-152, 153.)[1]
The substance and content of this exchange was similar to Plaintiffs testimony delivered in his 1997 deposition in Beauregard v. MetropolitanLife. et al, P.C. 1994-4187.[2] Plaintiff argues that his deposition testimony raises a disputed issue of material fact regarding his exposure to OI's product during the relevant time period, thereby precluding the grant of summary judgment.
 Standard of Review
"[S]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Tavares v. Barbour, 790 A.2d 1110, 1112 (R.I. 2002) (quoting Delta Airlines. Inc., v. Neary, 785 A.2d 1123, 1126 (R.I. 2001)). Recently, our Supreme Court explained:
 "Although the moving party bears the initial burden of establishing that no genuine issue of material fact exists for a finder of fact to resolve, it can carry this burden successfully by submitting evidentiary materials, such as interrogatory answers, deposition testimony, admissions, or other specific documents, and/or pointing to the absence of such items in the evidence adduced by the parties. If the moving party satisfies this burden, the nonmoving party then must identify any evidentiary materials already before the court and/or present its own competent evidence demonstrating that material facts remain in genuine dispute. However, the nonmoving party cannot rely solely on mere allegations or on the denials contained in the pleadings to defeat the motion." Heflin v. Koszela, 774 A.2d 25, 29 (R.I. 2001) (quoting Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
Our Court has further stated:
 "Something more than conclusory statements must be offered by the party opposing the entry of a summary judgment. Although an opposing party is not required to disclose in its affidavit all its evidence, he [sic] must demonstrate that he has evidence of a substantial nature, as distinguished from legal conclusions, to dispute the moving party on material issues of fact." Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998) (quoting Gallo v. National Nursing Homes, Inc., 106 R.I. 485, 489, 261 A.2d 19, 21-22 (1970)).
Here, OI has come forward with memoranda, affidavits, and exhibits challenging the Plaintiffs ability to identify his exposure to OI's products. On the eve of trial, OI has tested Plaintiffs prima facie case.Kelley v. Cowesett Hills Assocs., 768 A.2d 425, 430 (R.I. 2001). If the circumstances, as presented by OI, were accepted by this Court, OI would be entitled to a judgment as a matter of law. Id. Consequently, this Court finds the Defendant's showing, at this stage, sufficient to shift the burden onto the Plaintiff.
 Product Identification Analysis
OI alleges that the Plaintiff is required to establish frequent and regular exposure to its products with enough specificity to sustain his trial burdens. (OI's Memoranda at 5-6). Its argument relies primarily onWelch v. Keene, 575 N.E.2d 766 (Mass. App. Ct. 1991), a case in which the Massachusetts Court of Appeals affirmed a jury verdict in favor of a plaintiff in an asbestos-related injury action. The Welch Court did note that identification of the injurious product is a necessary element of the case Id., 575 N.E. 769 (citing Smith v. Ariens Co., 375 Mass. 620, 623 (1978), and Mathers v. Midland-Ross Corp., 403 Mass. 688, 691 (1989)). However, the Court then explained two possible methods for a plaintiff to sustain this trial burden. The Court stated that "[i]t is enough . . . to reach the jury that [the plaintiff] show that he worked with, or in close proximity to, the defendants' asbestos products." Id. (citing Roehling v. National Gypsum Co. Gold Bond Bldg. Prod.,786 F.2d 1225, 1228 (4th Cir. 1986)). Further, the Court continued by stating that "[a] plaintiff may also demonstrate exposure to a specific product through testimony of coworkers who can identify him as working with or around these products." Id.
The Rhode Island Supreme Court has not formally adopted the analysis as set forth by the Massachusetts Court of Appeals in Welch. Moreover, this Court is mindful of the distinction in the procedural posture between theWelch case, which addressed a post-trial motion, and the instant matter, which is in the summary judgment stage. Nonetheless, like in Massachusetts, Rhode Island also requires proof of both product identification and exposure evidence in asbestos-injury cases See Thomasv. Amway Corp., 488 A.2d 716, 718-722 (R.I. 1985) and Gorman v. AbbottLaboratories, 599 A.2d 1364 (R.I. 1991). Therefore, as Rhode Island law is substantially similar to Massachusetts law on this issue, the Welch
Decision presents a framework for analysis consistent with Rhode Island law. Although it not exhaustive, the Welch list provided guidance as to the types of materials with which a plaintiff claiming an asbestos-related injury can meet his or her burden of product identification at the summary judgment stage.[3]
In the present case, the Plaintiff has not established a date from which his exposure to any OI product could be referenced or measured, a critical omission due to OI's departure from the asbestos business in April of 1958. Although quite specific in other areas, Plaintiff Sherman repeatedly denied any memory in his answers relating to an exposure date and offered only vague, generalized time frames (i.e, the late 50's). Sherman's deposition testimony was silent on the issues of the proximity and the frequency of his contact with OI products containing asbestos. Moreover, as suggested in Welch, Plaintiff did not identify the names of co-workers who could verify his exposure to an OI product.[4] As OI argued at the hearing, Sherman's deposition testimony is contradictory to a 1993 affidavit submitted to the Court in which he stated: "I worked as an insulator and was exposed to asbestos-containing materials from 1961 until 1982." On the eve of trial, Plaintiff Sherman's case rests on the possibility of producing evidence or testimony at trial that was either absent from, or contrary to, discovery materials. Thus, after completion of discovery, Plaintiff Sherman cannot sustain his threshold obligation of product identification. See Celotex, supra.
The Plaintiff cites this Court's decision in Totman v. A. C. S.,
C.A. No. 00-5296; 2002 R.I. Super. LEXIS 23 (February 11, 2002), another asbestos case involving the issue of product identification. In Totman,
the injured party claimed that the corporate defendant manufactured marine turbines that contributed to the injured party's asbestos exposure. The corporate defendant filed for summary judgment, arguing that the turbines it manufactured did not contain thermal insulation and that the injured party failed to produce sufficient evidence of product identification and/or exposure. The injured party countered the corporate defendant's argument with deposition testimony stating that he worked near turbines which the company admitted that it manufactured. This Court held that factual issues warranted going forward with a trial in that case. Whether the turbines ever contained any quantity of asbestos or whether the company ever directed persons in the installation of asbestos materials in the turbines were issues for a jury to determine. It was the jury's duty to determine matters of credibility in expert testimony that would be presented by the parties on this issue.
However, Plaintiff Sherman's response to OI's summary judgment motion is distinguishable from the plaintiffs response to the defendant's motion in Totman. In Totman, the plaintiff primarily relied on the defendant's admissions to establish that the plaintiff worked near at least one turbine manufactured by the defendant during the relevant time period. These admissions, along with the plaintiffs deposition testimony, were sufficient to satisfy the threshold identification and exposure elements of the plaintiffs claim on summary judgment. Therefore, issues of material fact remained on the issues of substantial causation and whether the turbine in question actually contained asbestos, on which elements the plaintiff was prepared to offer expert testimony. In the present case, OI has made no such admissions. Further, unlike the plaintiff inTotman, Plaintiff Sherman has not come forward with any deposition testimony or other relevant materials of a substantial nature to suggest, beyond conjecture, a similar unity of time, place, and product. As such, in response to Defendant OI's properly supported motion for summary judgment, Plaintiff Sherman has failed to sustain his threshold burden on an essential element of his asbestos-related claim. Accordingly, contrary to this Court's conclusion in Totman and mindful of the summary judgment standards set forth in Heflin and Bourg, OI's summary judgment motion is granted in the Sherman case.
 Conclusion
After reviewing the materials submitted by both parties herein, in response to Defendant Owens-Illinois' duly supported Motion for Summary Judgment, Plaintiff failed to present materials to this Court sufficient to frame a disputed issue of material fact, for trial, relating to the Plaintiffs ability to identify exposure to a product of the Defendant's. Product identification is part of a Plaintiffs threshold, prima facie case in asbestos-litigation, and the inability of Plaintiff to make any showing, beyond speculation, on this element entitles the Defendant to a judgment as a matter of law. Therefore, Defendant's Motion for Summary Judgment must be and is granted.
Counsel shall submit appropriate orders for entry.
[1] Further, in his 2002 deposition, Plaintiff briefly testified regarding the packaging of various types of insulation that he remembered using. (Sherman Deposition, February 15, 2002 at 14-16.) While discussing the boxes in which various brands of insulation were packaged, the Plaintiff testified as follows:
 "Q. [Discussing another product] And did it have any writing on it?
 A. Yes, they do.
 Q. What did the writing say? What did it look like?
 A. Oh, I can't remember. No.
 * * * * *
 Q. [Discussing Kaylo] And do you remember what the packaging looked like, words or letters?
 A. No, Just the names on it, that's all."
(Id. at 15.)
[2] "Q. Do you recall what year it was when you worked at Otis Air Force Base?
A. No, I don't remember that.
Q. But it was sometime before 1961?
A. Oh yes. Long before that. Probably in the "50's."
(Sherman Deposition, April 24, 1997 at 12-13.)
[3] Certainly, exposure to a specific product may also be substantiated in some other fashion, such as with physical evidence, for example. SeeTotman v. A. C. S., infra.
[4] Plaintiff said that he worked on the Otis Air Force Base with his father, Jimmy Dyer, and somebody whose name he could not recall but whom he knew was deceased. (Deposition at 151-154). He did not offer statements from any of these potential witnesses. Instead, Plaintiff later presented the Court with an affidavit from his brother, Charles Sherman, who claimed to work on the Otis project with his brother. This affidavit contradicts the Plaintiffs own deposition testimony in which Plaintiff asserts that Charles visited Otis only once in the 50's (Deposition at 102-103), there were only four workers who participated on the project (Deposition at 153), and that, unless he could not remember his brother's name, his brother was not one of the four workers. (Sherman Deposition, February 15, 2002 at 153.)