Haggerty, S. Jane, J.
This is a products liability action in which the plaintiff, Alice C. Belanger, alleges that she developed an allergy to natural rubber latex as a result of her use and/or exposure to gloves manufactured by the defendants Safeskin Corporation and Tillotson Rubber Company, Inc. (“TRC”). Belanger alleges negligence against both defendants (Counts I and II) and loss of consortium on the behalf of her husband and three children (Counts IV, V, VI, VII, VIII, IX). The defendants move for summary judgment. For the reasons discussed below, the defendant Safeskin’s motion is DENIED and defendant TRC’s motion is ALLOWED.

BACKGROUND

Plaintiff Alice C. Belanger alleges that she developed a hypersensitivity to natural rubber latex as a consequence of her use and exposure to natural rubber latex proteins in medical gloves manufactured by the defendants Safeskin Corporation and TRC.
Belanger became a nurse in 1983. She first recalls using latex gloves in her employment as a nurse at Georgia Baptist Hospital, where she worked prior to her employment at UMass/Memorial Hospital in July of 1993. She worked as a nurse at UMass/Memorial Hospital until February of 1998 when she became aware of sensitivity to latex. As a nurse she primarily wore non-sterile examination gloves. The plaintiff spent approximately one-half of her shift wearing powdered latex gloves and used approximately sixty gloves per day.
Belanger does not recall the manufacturer or the brand name of the gloves she used while working at the hospital. The supplier of the latex gloves to the hospital testified that it shipped Safeskin, Tillotson, and Maxim brand latex gloves to the hospital during the relevant time period. In addition, Belanger learned from her co-workers soon after she left the hospital that they were using Safeskin gloves. TRC sold its natural rubber latex glove manufacturing business to Tillotson Healthcare Co. (“THC”) as of January 30, 1993. On May 17, 2002, THC filed for bankruptcy.

DISCUSSION

I. Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The non-moving party’s failure to prove an essential element of its case mandates summary judgment in favor of the moving party. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed fact. Lalonde v. Eissner, 405 Mass. 207, 209 (1989). Once the moving party has established the absence of a triable issue, the party opposing judgment must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17.
I. Plaintiff Sufficiently Alleges Product Identification for Safeskin, Not TRC
As a threshold matter, a successful negligence action requires identification of the party responsible for causing injury. Payton v. Abbott Labs, 386 Mass. 540, 570 (1982). The identification requirement separates wrongdoers from innocent actors and ensures that wrongdoers are held liable for only the harm that they have caused. Id. A plaintiff who sues a particular manufacturer for products liability generally must be able to prove that the item which caused the injury can be traced to a specific manufacturer. Mathers v. Midland-Ross Co., 403 Mass. 688, 691 (1989).
Based on these principles, the appeals court declined to impose liability against the manufacturer of *53 a hockey stick allegedly involved in an injury at an elementary school. Garcia v. Kusan, 39 Mass.App.Ct. 322, 326 (1995). The claim failed because the school system had purchased the type of stick involved from several different manufacturers and the particular stick which struck the student could not be affirmatively identified. Garcia v. Kusan, 39 Mass.App.Ct. 322, 326 (1995). According to the director of physical education, he believed that the defendant manufacturer’s sticks were in use on the day of the incident based on the fact that “those were the first hockey sticks we purchased.” Id.
The Payton court suggested, however, that it could recognize some relaxation of the traditional identification requirement in appropriate circumstances. Payton, 386 Mass, at 574. Thus, the appeals court relaxed the standard when the harm to the plaintiff arose out of exposure to asbestos. Welch v. Keene Co., 31 Mass.App.Ct., 157, 161 (1991). In upholding a jury’s finding that the plaintiff sufficiently identified the defendant manufacturers of asbestos in Welch, the court stated that, “(i]t is enough, however, to reach the jury that [the plaintiff] show that he worked with, or in close proximity to the defendants’ asbestos products.” Moreover, “a plaintiff may demonstrate exposure to a specific product through testimony of coworkers who can identify him as working with or around these products.” Id.
The factual record in this case warrants relaxation of the product identification requirement because a reasonable jury could conclude that defendant Safeskin’s latex gloves harmed the plaintiff. Unlike the harm in Garcia which resulted from a single incident involving a single hockey stick, the incident in this case arose over an extended period of time as in the exposure to asbestos in Welch, Furthermore, the factual record supports an inference that the plaintiff was exposed to Safeskin’s gloves because the hospital administrator testified in his deposition that the hospital used Safeskin gloves between 1992 and 1998 and the hospital’s supplier likewise indicated it sold Safes-kin during the relevant time period. Furthermore, the plaintiff provides evidence via affidavit that her coworkers reported to her soon after she left the hospital that the gloves in use at that time were labeled Safes-kin. Like the plaintiff in Welch who had the opportunity to present similar types of facts to a jury, the plaintiff will likewise be allowed the opportunity to show that she “worked with or [was] in close proximity to the defendants’ [products].” Welch, 31 Mass.App.Ct. at 161.
The evidence relative to defendant TRC does not warrant the same conclusion. In TRC’s case, it stopped shipping to UMass/Memorial on January 30, 1993 and Belanger did not start working at the hospital until July of 1993. Though the record supports the possibility that the hospital still used TRC gloves during the relevant time period, the plaintiff cannot establish a sufficient nexus between herself and the gloves manufactured by TRC either through her own testimony or her co-worker’s testimony. Therefore, there is insufficient evidence on which a reasonable jury could conclude that the plaintiff was exposed to the defendant TRC’s products.[3]
II. Duty To Warn Is A Question For The Jury
Safeskin claims that it had no duty to warn the plaintiff about the risks of latex allergies because the potential for allergic reactions due to latex sensitivity was obvious to medical professionals. In the context of products liability, a manufacturer has the duty to caution purchasers of its product by providing adequate warnings of foreseeable latent dangers involved in the product’s normal and intended use. Fiorentino v. A.E. Stanley Mfg., 11 Mass.App.Ct. 428, 433 (1981). The manufacturer’s duty to warn depends on its “superior knowledge and is said to exist when one may reasonably foresee danger or injury to one less knowledgeable unless adequate warning of danger is given.” Id. (citations omitted). Thus, the duty to warn assumes some reason to suppose a warning is needed, so it only has application in the context of dangers which are concealed or less than obvious. Maldano v. Thomson National Press Co., 16 Mass.App.Ct. 901, 911 (1983). When a manufacturer reasonably expects that only those with a certain degree of knowledge and expertise to come into contact with a product, the obviousness standard should be considered in light of the reasonable person with that knowledge. Laaperi v. Sears Roebuck & Co., Inc., 787 F.2d 726, 731 n.3 (1986).
In this case, the defendants reasonably expected medical professionals to use the latex gloves so the issue is whether the latent risk of allergic reactions was obvious as a matter of law to Belanger, a nurse. Whether a warning is required depends on whether the average user of the glove would have received some benefit from the warning. Laaperi, 787 F.2d at 730. Though the defendant points to significant efforts by the hospital to educate its personnel about the risks of latex as evidence of obviousness, the need to educate its employees about the risks undermines the argument that the danger was obvious. In these circumstances, a reasonable jury could conclude that the plaintiff would have received a benefit from a warning. Questions of how well-known the risk of an allergic reaction to latex gloves during the relevant time period, the extent of those risks that should have been known by the plaintiff, and when she should have known them must be reserved for the jury.
III. “Heeding Presumption” Not Overcome As A Matter of Law
The law recognizes a presumption that if the manufacturer had provided an adequate warning, the plaintiff would have read and heeded such a warning. Wolf v. Ford Motor Co., 6 Mass.App.Ct., 346, 352 (1978). But the manufacturer may rebut the presumption by coming forward with contrary evidence that the *54 presumed facts do not exist. Id. The defendants argue that Belanger’s admission that she never saw the labeling on the boxes establishes that even if the defendants supplied a warning she would not have read it. While this may be evidence tending to prove that Belanger would not have read nor heeded any warning provided by the defendants, it is not conclusive. Therefore, whether Belanger’s conduct of not looking at the labeling on the boxes overcomes the presumption that she would have heeded such a warning is likewise a question for the jury.
IV.Plaintiffs Expert Testimony Sufficient
Safeskin next alleges that Belanger’s claim fails because the plaintiff has not offered expert testimony with regard to the design defect of the gloves. In this case, the plaintiff does not allege a failure with regard to the gloves themselves but instead alleges the gloves are defective because of inadequate warnings. Massachusetts recognizes that a product can be “defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings . . . and the omissions of the instructions or warnings renders the product not reasonably safe.’’ Vassallo v. Baxter, 428 Mass. 1, 21 (1998). The adequacy of the warnings is typically outside the scope of the common knowledge of jurors so expert testimony is required. Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 402-03 (2003) (only where professional knowledge is so gross or obvious can jurors rely on their common knowledge). As the plaintiff intends to provide an expert witness, Dr. Alison G. Vrendenburgh to testify relative to the sufficiency of the warnings, she satisfies the requirement for expert testimony.
V.Warranty of Implied Merchantability Survives
A manufacturer’s failure to provide an adequate warning constitutes a breach of the implied warranty of merchantability. Yates v. Norton Co., 303 Mass. 70, 74 (1988). As discussed above, the juiy must determine whether the manufacturers breached the duty to warn. The claim survives, however, only to the extent that it will be analyzed under principles that the gloves were used for the “ordinary purpose” for which the goods were required because the plaintiff has not adequately alleged that the goods would be used for a “particular purpose” known to the seller. See G.L.c. 106, §2-315.
VI.Federal Regulations Do Not Preempt the Common-Law Claim
As a final matter, Safeskin alleges Belanger’s implied warranty claims are preempted by federal law pursuant to the Medical Device Amendments (“MDA”) to the Food Drug, and Cosmetic Act because latex gloves are a medical device. 21 U.S.C. §§360c-360k. The MDA provides an express preemption provision, which states that:
(a) Except as provided in subsection (b) of this section, no state or political subdivision of a state may establish or continue in effect with respect to a device intended for human use any requirement:
(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device or to any other matter included in a requirement applicable to the device under this chapter.
21 U.S.C. §360k(a). Under federal Food and Drug Administration (FDA) regulations, a state cause of action is preempted “only where the FDA has established specific counterpart regulations or . . . other specific requirements applicable to a particular device.” 21 C.F.R. §808.1(d).
When analyzing the scope of a statute’s preemption clause, “the purpose of Congress is the ultimate touchstone.” Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (citations omitted). In examining §360(k), the Court stated that Congress did not intend to preempt most common-law duties enforced by damage actions. Id. at 491. In most cases, a state law will be preempted only to the extent that the FDA has promulgated a relevant federal requirement. Id. at 496. Therefore, preemption analysis requires “a careful comparison between the allegedly preempting federal requirement and the allegedly preempted state requirement to determine whether they fall within the intended preemptive scope of the statute and regulations.” Id. at 500.
In this case, the FDA classifies the latex gloves used by Belanger as Class I medical devices which present no unreasonable risk of illness or injuxy and are subject only to minimal regulation by general controls. See Medtronic, Inc., 518 U.S. at 477; 21 U.S.C. §360c(a)(l)(A); 21 C.F.R. §880.6250. Despite this classification, the defendants contend that the FDA has established specific regulations for latex gloves in a publication titled, “Regulatory Requirements for Latex Gloves: A Workshop Manual” published in May 1993. The manual itself, however, states in the abstract that it contains “guidance” and that the “educational information [contained] in this manual is not an official statement binding on the FDA.” Moreover, the publication states explicitly that “medical gloves are subject to general controls which include establishment registration device listing, premarket notification, labeling and good manufacturing practices,” and then describes how these general controls apply in the context of latex gloves. Like the regulations in Medtronic that the Supreme Court rejected as preemptive, these types of regulations reflect “generic concerns about device regulation generally.” The FDA did not even adopt specific regulations concerning labeling for *55 devices that contain natural rubber until September of 1998.
Even if this court accepted the manual as establishing specific regulations for the manufacture of latex gloves, the preemption claim still fails because the plaintiff bases her claim on a generalized duty to warn. As this common-law duty to warn was not specifically developed with respect to medical devices, it is “not the kind[] of requirement!] that Congress and the FDA feared would impede the ability of federal regulators to implement and enforce specific federal requirements.” Id. at 501. Thus, the so-called federal regulations as described in the “Regulatoiy Requirements for Latex Gloves: A Workshop Manual,” are not specific counterpart regulations to any state requirements “specific to a particular device” and the preemption claim fails.

ORDER

It is hereby ORDERED that Defendant Safeskiris motion for summary judgment is DENIED. It is further ORDERED that Defendant Tillotson’s motion for summary judgment is ALLOWED.

 The evidence of exposure is much stronger relative to THC because the record indicates sustained exposure to THC’s product over the relevant period.